## A04A1352. CITY OF ALBANY v. PIPPIN et al.
### (602 SE2d 911)

BLACKBURN, Presiding Judge.

The City of Albany appeals the trial court's ruling in favor of C. M. Pippin, Jr., Barbara Pippin, and Sani-Agri Services, Inc. (the "appellees"), following a full bench trial. The City sought contribution pursuant to OCGA § 51-12-32, from the appellees, its alleged joint tortfeasors, following its voluntary settlement of an action against the City and appellees, alleging nitrate contamination of certain privately-owned wells. All of the defendants had denied liability, the City did not have the consent of the appellees to settle the case, and no judicial determination of liability had been made, prior to the City's voluntary payment.

The City argues that the trial court erred in finding that the City failed to prove that it and the appellees were joint tortfeasors, a necessary element of its claim, and in ruling for the appellees. For the reasons that follow, we affirm.

"The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them." (Punctuation omitted.) *Vance v. Jackson*.[1] Therefore, in this instance, the trial court's finding that the City failed to prove that it was entitled to contribution must be upheld if there is any evidence to support that finding. In reviewing this case, this Court cannot weigh the evidence or consider the credibility of witnesses, as these functions are reserved solely for the trier of fact. Here, we must accept the findings of the trial court on such matters. Id.

Pursuant to the required deference to the trial court's findings, the record shows that in 1983, the City of Albany, along with the appellees, began injecting bio-sludge, a by-product of municipal wastewater treatment plants, into farmland where it would provide nutrients to growing crops.[2] In 1995, area residents began complaining of odor emanating from the bio-sludge area, and subsequent groundwater tests showed nitrates exceeding the EPD maximum

---

[1] *Vance v. Jackson*, 233 Ga. App. 480, 481 (1) (504 SE2d 529) (1998).

[2] The City obtained permission for the bio-sludge application program under a plan of operation approved and issued by the Georgia Environmental Protection Division ("EPD") of the Department of Natural Resources. From 1983 to 1996, Sani-Agri put down approximately 265 million gallons of nitrogen loaded sludge.

contaminant level ("MCL") of 10 mg/L (milligrams per liter). Later, some 110 plaintiffs sued the defendants, contending that they caused the plaintiffs' wells to be so contaminated by nitrates that they could not be used as a source of drinking water.

Extensive discovery ensued, and the bulk of the resulting scientific evidence indicated that the bio-sludge application was not a source of the high nitrate levels. Nonetheless, the City unilaterally settled with the plaintiffs in a total amount of $1,000,000. The City did not consult with the appellees prior to this settlement. Thereafter, the City sought contribution from the appellees under OCGA § 51-12-32.

The trial court, sitting without a jury, denied the City's request for contribution, finding "that the City cannot show by a preponderance of the evidence that the bio-solids application program by the City and Sani-Agri on land of the Pippins caused or contributed to excessive nitrates in the groundwater causing damages to the original plaintiffs." The City now appeals this finding.

OCGA § 51-12-32 creates a right of contribution among joint tortfeasors. To prove that it is entitled to contribution from the appellees, the City must show that its own negligent actions and those of the appellees jointly caused contamination of the groundwater. "In order to state a cause of action for negligence it is necessary to establish the essential elements of duty, breach of that duty, and proximate cause which amounts to a legally sufficient causal connection between the conduct alleged and the resulting injury." (Punctuation omitted.) *Finney v. Machiz*.[3] With respect to the causation element, "[n]o matter how negligent a party may be, if [its] act stands in no causal relation to the injury it is not actionable." (Punctuation omitted.) Id. at 773.

In their complaint, the plaintiffs identified three possible sources of the groundwater contamination: the bio-sludge application program, a feedlot operated by the Pippins in the 1970s and 1980s, and commercial fertilizers applied to fields and pecan groves by the Pippins. Since the City did not participate in the Pippins' operation of the feedlot or application of commercial fertilizers, the only act which could result in the City's being held liable for the nitrate contamination as a joint tortfeasor was its participation in the bio-sludge program. Thus, in order to be entitled to contribution from the appellees, the City had the obligation to establish by a preponderance of the evidence that the bio-sludge program contributed in some way to the high nitrate levels. The evidence submitted by the City on this

[3] *Finney v. Machiz*, 218 Ga. App. 771-772 (463 SE2d 60) (1995).

issue, however, was insufficient to establish that operation of the bio-sludge program contributed to the excess nitrate levels.

During the course of the bench trial, the trial court received scientific reports and expert testimony in evidence. For example, based on scientific analysis, the former City sewer systems superintendent testified that bio-sludge application did not cause the groundwater problems. In addition, an EPD "Nitrate Source Assessment" stated: "The potential source of the nitrate contamination does not appear to be from bio-solids." The trial court further considered well tests showing that the most significant increase in the nitrate readings occurred prior to the start of the bio-sludge application program, thereby indicating that the bio-sludge program was not the cause of nitrate elevation.

Other evidence regarding nitrate levels in well water was also presented. The court considered

> that one of the main concerns in land applying bio-solids sludge from wastewater treatment plants is the loading into the soil of "heavy" metals contained in the sludge, such as zinc, lead, nickel and cadmium. None of the well samples show[ed] this groundwater had elevated readings of such metals, which casts doubt on the land application program as a source of the nitrate contamination.

(Footnote omitted.) In addition, Dr. David Wenner, a geology professor at the University of Georgia with advanced degrees in geochemistry, considered the relative age of the ground water through tritium testing and concluded that it was unlikely the nitrates in the plaintiffs' water could be tied to 1984-1995 bio-sludge applications. Finally, the trial court noted that "[w]hile some of the experts focused on the abandoned cattle feedlot as the likely source of the increased nitrates, other potential sources proffered would include the dairy of years ago, the use of commercial fertilizers by Mr. Pippin and other area farmers over the years, and the use of septic tank systems in the area."

Although the plaintiffs' expert opined that the bio-solids application program was the source of the high nitrate levels, the trial court found that his testimony lacked merit and was largely inconsistent with the balance of the evidence in the case. In making this determination as the trier of fact, the trial court found that the plaintiffs' expert's testing methods were incomplete, and it noted that the expert had no experience in evaluating land applications of bio-solids materials.

Based on the evidence of record, the trial court ruled that the City was not entitled to contribution from the appellees. Contribution is

allowed only between parties who are actually joint tortfeasors. As this Court has noted, "contribution among joint tortfeasors must originate in the first instance on the interconnection of acts of negligence on the part of each resulting in damage to the plaintiff." *Maxwell Bros. of Athens v. Deupree Co.*[4] See also *Klausman v. Klausman*[5] ("[c]ontribution can not properly be granted as affirmative relief unless the party claiming such relief has been compelled to discharge a liability for which he and the other party were equally bound") (punctuation and emphasis omitted). "The common liability rule also means that one tortfeasor can obtain contribution from the other only if both were legally liable to the plaintiff, so that a tortfeasor seeking contribution must prove *his own liability* where that liability has not been established by a judgment." (Emphasis supplied.) Dobbs.[6] See also Prosser and Keeton[7] ("It is usually held, however, that in the contribution suit such a compromiser must sustain the burden of proof, not only as to the compromiser's own liability to the original plaintiff, but also as to the amount of the damages and the reasonableness of the settlement."). See also *GAF Corp. v. Tolar Constr. Co.*[8] ("the quintessential element of a claim for contribution [is] the legal compulsion to pay on the part of one seeking contribution from a joint tortfeasor").

Based on its evaluation as trier of fact of this significant amount of scientific evidence, the trial court found the evidence insufficient to satisfy the City's burden of proof that the bio-sludge program contributed to the nitrate contamination. It held that this failure was fatal to the City's contribution claim. We have reviewed the trial court's order and there is significant evidence to support its findings. There is nothing to indicate that those findings are in error, much less clearly erroneous. Accordingly, the trial court did not err in dismissing the City's case.

The result in this case is not altered by the City's argument that, while the trial court found that the City's sludge disposal program was not the proximate cause of the elevated nitrate levels, lack of proximate cause is not a complete defense to the original suit and should not bar contribution. In making this argument, the City relies on two federal court decisions, *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*[9] and *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*[10] The City urges

---

[4] *Maxwell Bros. of Athens v. Deupree Co.*, 129 Ga. App. 254, 257 (2) (199 SE2d 403) (1973).
[5] *Klausman v. Klausman*, 186 Ga. App. 669, 670 (368 SE2d 185) (1988).
[6] Dobbs, The Law of Torts (2000 ed.), § 386.
[7] Prosser and Keeton, Torts (1984 ed.), p. 339.
[8] *GAF Corp. v. Tolar Constr. Co.*, 246 Ga. 411, 412 (271 SE2d 811) (1980).
[9] *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 92 FSupp.2d 1342 (N.D. Ga. 1998).
[10] *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 53 FSupp.2d 1361 (N.D. Ga. 1999).

us to adopt the federal court's "clarification" of contribution law and hold that a contribution defendant should only be able to raise against contribution claims defenses which are defenses as a matter of law. We decline to do so.

*Foster v. Nix*,[11] the Georgia case from which the federal court proceeded to its clarification of "complete defense," involved liability under an indemnity agreement. In the course of addressing the appellants' various arguments, this Court stated:

> The [appellants] claim that the failure to assert a justifiable defense to the claim of the bank releases them as indemnitors. This is in effect a repetition of previous arguments that the corporation did not actually receive a loan and therefore did not owe the bank anything. Hence, it is argued, the failure to assert a valid defense served to release the [appellants] from any liability. We recognize that no indemnification may be recovered if the party had a defense which would have defeated the action but failed to assert it. However, this presupposes the existence of such a defense. As has been pointed out previously, while there might be some evidence that a defense was available the proof offered in no way demanded a finding that there was a defense which would have defeated the claim. In such circumstances, the jury was authorized to find, as they did, that the right to indemnification had not been lost.

(Citation omitted.) Id. at 727 (1) (c). Unlike the federal court, we do not believe that this language indicates an intent on the part of this Court to limit the defenses a contribution plaintiff should have asserted to those defenses which are defenses as a matter of law.

*Foster v. Nix* cites *GAF Corp. v. Tolar Constr. Co.*, supra. In that case, the Supreme Court stated: "Clearly, in the absence of allegations showing a legal necessity for payment by the third-party plaintiff to the injured party, we must assume that such payment was made voluntarily and not under the compulsion of law; and such being true, the third-party plaintiff had no standing to seek indemnity from the third-party." (Punctuation omitted.) *GAF*, supra at 411. The Court found that "[t]his same principle would apply to a claim for indemnification," and adopted the reasoning of a Louisiana court that "no indemnification or contribution can be recovered by the party cast

---

[11] *Foster v. Nix*, 173 Ga. App. 720 (327 SE2d 833) (1985).

against a third party if the party cast had a defense available which would have defeated the action but failed to assert it." (Punctuation omitted.) Id. at 412.

The holding in *GAF* indicates to us that any defense showing the lack of a legal compulsion to pay would be sufficient to defeat a claim of contribution. It makes no sense to limit such defenses to those which are defenses as a matter of law and exclude a defense such as causation, which is an indispensable element of any tort claim.

For all the reasons set forth above, we affirm the judgment of the trial court.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED AUGUST 6, 2004.

*Jenkins & Olson, Peter R. Olson*, for appellant.
*Alston & Bird, Jay D. Bennett*, for appellees.