A07A1305. EMERGENCY PROFESSIONALS OF ATLANTA, P.C.
v. WATSON et al.
(654 SE2d 434)

JOHNSON, Presiding Judge.

This appeal is from the trial court's grant of summary judgment in favor of the third-party defendants in an action for contribution and indemnity. We hold that the third-party plaintiff was not entitled to contribution and indemnity. Therefore, we affirm the grant of summary judgment.

Emergency Professionals of Atlanta, P.C. ("EPA"), provides physicians to staff emergency medical facilities. Matthew Watson, M.D., and EPA executed a "Physician Agreement" in which Watson agreed to provide physician services in emergency rooms and EPA agreed to pay him for the work. The agreement indicated that Watson was an independent contractor and stated that EPA had no control over the method or manner in which he performed his professional services.

Pursuant to the agreement, Watson was working as a physician in the emergency room of Northside Hospital when Lucy Skaggs came in with shortness of breath and an elevated temperature.

---

Watson examined Skaggs and consulted Dr. Brinkley Goodson, a specialist on call to the emergency department. Watson evaluated, treated and discharged Skaggs from the emergency room. The next morning, Skaggs collapsed at home and died.

Skaggs' heirs and estate (collectively, "Skaggs") filed a medical malpractice and wrongful death action against Watson, Goodson, their professional corporations, Northside Hospital, Inc., and Georgia Baptist Health Care System, Inc., alleging the defendants were negligent in the manner in which they treated and discharged Skaggs. Skaggs sued EPA based on a theory of respondeat superior, alleging Watson was acting as EPA's agent or employee when he treated Skaggs.

EPA's registered agent was served in December 2003. All of the defendants except EPA filed timely answers to the complaint. In April 2004, Skaggs moved for a default judgment against EPA. The trial court entered default judgment against EPA, noting that EPA failed to file an answer or move to open the default within 15 days of the January 30 default date.[1]

A few days later, EPA moved to set aside the default judgment and to open the default based on excusable neglect or, alternatively, because a proper case had been made for it to be opened.[2] EPA filed with the motions an answer denying the allegations in the complaint, including the allegation that Watson was acting as its employee or agent. The answer was not verified, and there was no affidavit showing a meritorious defense to the action. After a hearing, the trial court denied the motion because EPA failed to include sworn testimony establishing a meritorious defense.[3]

After default judgment was entered on the issue of EPA's liability, a jury trial was held on the issue of damages. The jury found EPA liable to Skaggs for $900,000 in damages plus additional costs. EPA paid the judgment entered on the jury's verdict.

Having obtained a default judgment against EPA, Skaggs dismissed her action against the other defendants. EPA filed a cross-claim for contribution and indemnity against Watson, Goodson, their professional corporations, Northside Hospital and Georgia Baptist Health Care System. EPA also claimed Watson was required to indemnify it based on the indemnification provision in the physician agreement. The third-party defendants moved for summary judgment contending, among other things, that the indemnification and contribution claims were barred by EPA's failure to assert available

---

[1] See OCGA § 9-11-55 (a).

[2] See OCGA § 9-11-55 (b).

[3] See *Rapid Taxi Co. v. Broughton*, 244 Ga. App. 427, 429 (2) (535 SE2d 780) (2000).

defenses which would have prevented the entry of default judgment against it. Watson argued, in addition, that the indemnity provision in the physician agreement did not apply to a default judgment entered against EPA. The trial court granted summary judgment to all of the third-party defendants. EPA appeals.

1. EPA contends the trial court erred in granting summary judgment to the third-party defendants on the contribution and noncontractual indemnity claims. We disagree.

Generally, a tortfeasor who pays a judgment enjoys a right of contribution against other tortfeasors.[4] Contribution among joint tortfeasors is enforceable where one has paid more than his share of the common burden which all are equally bound to bear.[5] An action for indemnity allows one who has been required to pay damages caused by the tort of a third party to recover against that party; indemnification contemplates imputed liability arising from the torts of another.[6]

However, no indemnity claim exists where the party seeking indemnity was not legally obligated to make the payment.[7] In the absence of allegations showing a legal necessity for payment by the third-party plaintiff to the injured party, we must assume that such payment was made voluntarily and not under the compulsion of law; and such being true, the third-party plaintiff had no standing to seek indemnity from the third-party defendant.[8] This same principle applies to a claim for indemnification.[9] Moreover, where an action brought by an injured person against an alleged tortfeasor results in the alleged tortfeasor compromising the claim or being cast in judgment, no indemnification or contribution can be recovered by the alleged tortfeasor from a third party if the alleged tortfeasor had a defense available which would have defeated the action but failed to assert it.[10]

In this case, EPA had a defense available to it which would have defeated the action but failed to assert that defense. Skaggs sued EPA based on the doctrine of respondeat superior or agency, stating that Watson was acting as an agent or employee of EPA, and that EPA was therefore liable for Watson's acts or omissions. In his answer, Watson stated that he was an independent contractor and denied being an

---

[4] OCGA § 51-12-32 (a); *Crawford v. Johnson*, 227 Ga. App. 548, 549 (1) (489 SE2d 552) (1997).

[5] *Tenneco Oil Co. v. Templin*, 201 Ga. App. 30, 35 (2) (410 SE2d 154) (1991).

[6] *Auto-Owners Ins. Co. v. Anderson*, 252 Ga. App. 361, 363 (1) (556 SE2d 465) (2001).

[7] Id. at 364 (2).

[8] *GAF Corp. v. Tolar Constr. Co.*, 246 Ga. 411 (271 SE2d 811) (1980).

[9] Id. at 412.

[10] Id.; *City of Albany v. Pippin*, 269 Ga. App. 22, 26-27 (602 SE2d 911) (2004).

agent or employee of EPA. The physician agreement executed by EPA and Watson indicated that Watson was an independent contractor. In the answer EPA filed in connection with the motions to set aside and open the default, EPA denied that Watson was an agent or employee of EPA. The trial court recognized that there was no dispute that Watson was an independent contractor and that such would be a complete defense to EPA being held liable for Watson's conduct.[11]

EPA urges that its payment to Skaggs was compulsory inasmuch as it was made pursuant to a default judgment. Therefore, EPA argues, the rule that indemnification is unavailable to a party who made a voluntary payment is inapplicable.[12] This argument misses the point. As is clear from the *GAF*[13] case, the "voluntariness" issue does not turn on whether payment was made pursuant to a settlement versus a default or other type of judgment. Instead, a defendant's payment to an injured party is considered "voluntary" if it was made in the absence of allegations showing a legal necessity for payment.[14] Any defense showing the lack of a legal compulsion to pay is sufficient to defeat a claim for contribution.[15] While it is true that EPA's payment was compulsory once judgment was entered against it, it is clear that EPA had a defense which would have defeated the claim, and it could have avoided having the judgment entered against it by asserting the defense. EPA failed to raise a legal defense that would have defeated the claim, so it was not legally compelled to pay Skaggs.[16] The trial court did not err in granting the third-party defendants' motions for summary judgment on EPA's contribution and noncontractual indemnification claims.

2. EPA contends the trial court erred in granting summary judgment to Watson on the indemnity cross-claim which was based on the physician agreement. We disagree.

The physician agreement which Watson and EPA executed contained a clause in which Watson agreed to indemnify EPA for "any claims, loss, damage, cost, expense, including reasonable attorney fees, or liability arising out of or relating to the services performed by [Watson] or acts or omissions by him pursuant to this Agreement."

---

[11] See generally *Fieldstone Center v. Stanley*, 216 Ga. App. 803, 805 (3) (456 SE2d 61) (1995).

[12] See *GAF*, supra (defendant cannot seek indemnity from third party where defendant knowingly failed to raise a valid defense and payment of the judgment was therefore deemed voluntary).

[13] Id.

[14] See id. at 411; *Auto-Owners Ins. Co.*, supra at 364 (2).

[15] *City of Albany*, supra at 27.

[16] See id.

As EPA points out, the contract provision in question is clear and unambiguous. However, the provision, which would obligate Watson to indemnify EPA against any claims or liability arising out of or relating to the agreement, does not require indemnification in this case.

EPA's liability to Skaggs arose not out of Watson's conduct, but out of EPA's own conduct: EPA is liable because it failed to assert a valid defense which would have absolved it of any liability in the matter. It is undisputed that EPA could not have been held liable for the acts of Watson, an independent contractor. As discussed in Division 1, EPA had no legal compulsion to pay Skaggs. In failing to answer Skaggs' complaint and then failing to properly move to open the default or set aside the default judgment, EPA authored its own fate.

Furthermore, unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, this Court will not interpret such an agreement as a promise to save the indemnitee from his own negligence.[17] Due to public policy concerns, unless there is explicit language to the contrary, an indemnity agreement cannot be interpreted to hold an indemnitee harmless from its own negligence.[18] The words of a contract of indemnification must be construed strictly against the indemnitee.[19] The indemnity clause in this case does not expressly, plainly, clearly, and unequivocally state that Watson would indemnify EPA from its own negligence.[20] Accordingly, the trial court did not err in declining to make Watson indemnify EPA for EPA's own negligence in the absence of express language requiring such.[21]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 19, 2007 — 

*Hawkins & Parnell, Kim M. Jackson, H. Lane Young II*, for appellant.

*Huff, Powell & Bailey, Randolph P. Powell, Jr., Jeffrey D. Braintwain, Watkins, Lourie, Roll & Chance, Lance D. Lourie, Weinberg,*

[17] *Southern R. Co. v. Union Camp Corp.*, 181 Ga. App. 691, 692 (1) (353 SE2d 519) (1987).
[18] *Park Pride Atlanta v. City of Atlanta*, 246 Ga. App. 689, 690-691 (1) (541 SE2d 687) (2000).
[19] Id. at 691 (1).
[20] See id.
[21] See id.; *The Svc. Merchandise Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 297 (3) (617 SE2d 235) (2005).

*Wheeler, Hudgins, Gunn & Dial, Carol P. Michel, Shubhra R. Mashelkar, Hall, Booth, Smith & Slover, Terrell W. Benton III, Jason D. Hergenroether,* for appellees.

