716 S.E.2d 779 (2011)
311 Ga. App. 674
U.S. LAWNS, INC.
v.
CUTTING EDGE LANDSCAPING, LLC.
No. A11A1238.
Court of Appeals of Georgia.
September 15, 2011.
*781 Hawkins, Parnell, Thackston & Young, Matthew Farish Barr, William Matthew Davis, Atlanta, for appellant.
Bullard, Garcia & Wangerin, Kevin Allan Wangerin, for appellee.
BARNES, Presiding Judge.
U.S. Lawns, Inc. commenced this action seeking common law and contractual indemnification from Cutting Edge Landscaping, LLC. The trial court denied summary judgment to U.S. Lawns but granted it to Cutting Edge on the indemnification claims. The question on appeal is whether the trial court erred in holding that Cutting Edge was not required to indemnify U.S. Lawns for a settlement that U.S. Lawns voluntarily paid to a tort victim in a prior lawsuit, given that U.S. Lawns entered into the settlement only after it failed to answer the tort victim's complaint and had gone into default. For the reasons discussed below, we conclude that the trial court committed no error.
When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.
(Footnotes omitted.) Smith v. Gordon, 266 Ga.App. 814(1), 598 S.E.2d 92 (2004). See OCGA § 9-11-56(c).
So viewed, the evidence showed that U.S. Lawns contracted to provide landscaping services to Bank of America in Macon, Georgia. U.S. Lawns then subcontracted its landscaping duties to Cutting Edge. The subcontract contained an indemnification provision stating in relevant part:

*782 Subcontractor [Cutting Edge] indemnifies and holds Contractor [U.S. Lawns] harmless from and against any and all claims, demands, or actions made by any person or entity whether valid or not, arising in whole or in part, out of the performance by Subcontractor, including, without limitation, its employees, agents, and fees, [sic] incurred by Contractor in defending against ... or dealing with any such claims, demands, or actions.
Subcontractor specifically obligates itself to Contractor in the following respects (and this Subcontract is made upon such express condition) to wit:
...
Subcontractor shall protect, hold free and harmless, defend and indemnify Contractor and Owner [Bank of America] (including their officers, agents and employees) from all liability, penalties, costs, losses, damages, expenses, causes of action, judgments or other claims resulting from injury to or death sustained by any person (including Subcontractor's employees) or damage to property of any kind, which injury, death or damage arises out of or is in any way connected with Subcontractor's performance of work under this Subcontract.
Subcontractor's aforesaid indemnity and same harmless obligation shall apply to any act or omission, willful misconduct or negligent conduct, whether active or passive, on the part of Subcontractor (or its agents, sub-contractors or employees), and shall apply regardless of any active and/or passive negligent act or omission of Contractor or Owner or their agents or employees; however, such obligation shall not apply to claims arising from the sole negligence or willful misconduct of [C]ontractor or Owner or for defects in design furnished by Owner.
In July 2007, Gloria Freeman filed a negligence suit against several defendants, including Bank of America, U.S. Lawns, and Cutting Edge, alleging that she injured herself in July 2005 when she stepped in a hole on the premises of the bank. U.S. Lawns was served with the complaint and summons on September 19, 2007, but failed to file an answer and went into default. See OCGA § 9-11-55. Subsequently, on January 24, 2008, U.S. Lawns filed a motion to open the default in the Freeman action. The trial court denied the motion, finding that although U.S. Lawns had set up a meritorious defense to the tort action, it had failed to exercise due diligence and had no reasonable explanation for its failure to timely answer the complaint. After the trial court denied the motion to open the default, U.S. Lawns and Bank of America negotiated a settlement with Freeman, who dismissed her claims against them with prejudice in March 2009.
In September 2009, U.S. Lawns brought the present complaint seeking common law and contractual indemnification from Cutting Edge for the settlement it paid to Freeman, plus costs and attorney fees incurred in that case. U.S. Lawns moved for summary judgment on the issue of liability, contending that Cutting Edge was liable for indemnity as a matter of law under common law principles and the terms of the subcontract between the parties. Cutting Edge cross-moved for summary judgment, contending that indemnity was not available because the settlement paid by U.S. Lawns arose from its failure to answer the complaint and assert a meritorious defense in the Freeman action. Following a hearing, the trial court denied summary judgment to U.S. Lawns and granted it to Cutting Edge, resulting in this appeal.
1. In several related enumerations of error, U.S. Lawns contends that the trial court erred in denying its motion for summary judgment and granting Cutting Edge's cross-motion for summary judgment on its claim for common law indemnification. The trial court determined that the uncontroverted evidence showed that U.S. Lawns had a meritorious defense available in the Freeman action but failed to assert it, thereby precluding common law indemnification as a matter of law. We agree with the trial court.
The duty to indemnify may arise by operation of law, independently of contract. If a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action for indemnity *783 against the person whose wrong has thus been imputed to him.
(Punctuation and footnotes omitted.) Nguyen v. Lumbermens Mut. Cas. Co., 261 Ga. App. 553, 557(2), 583 S.E.2d 220 (2003). See also Auto-Owners Ins. Co. v. Anderson, 252 Ga.App. 361, 363(1), 556 S.E.2d 465 (2001). Generally, the fact that an indemnitee has settled or compromised the underlying tort action brought by the injured party does not bar the indemnitee from pursuing a claim for indemnification or contribution from a third-party indemnitor. See OCGA § 51-12-32; Auto-Owners Ins. Co., 252 Ga.App. at 364(2), 556 S.E.2d 465. Significantly, however, if the indemnitee who settled or compromised the underlying tort action "had a defense available which would have defeated the action but failed to assert it," no indemnification or contribution can be recovered. Emergency Professionals of Atlanta, P.C. v. Watson, 288 Ga.App. 473, 475(1), 654 S.E.2d 434 (2007). See GAF Corp. v. Tolar Constr. Co., 246 Ga. 411, 412, 271 S.E.2d 811 (1980); City of Albany v. Pippin, 269 Ga.App. 22, 26-27, 602 S.E.2d 911 (2004); Foster v. Nix, 173 Ga.App. 720, 727(1)(c), 327 S.E.2d 833 (1985). The defense available to the indemnitee in the underlying tort action could have been a legal one, such as a statute of limitation defense, see GAF Corp., 246 Ga. at 411-412, 271 S.E.2d 811, or a factual one, such as a defense that the evidence failed to establish causation. See Pippin, 269 Ga.App. at 26-27, 602 S.E.2d 911.
At the summary judgment stage, the relevant question is whether the evidence demands a finding that the indemnitee had a defense to the underlying tort action that would have defeated liability. See Foster, 173 Ga.App. at 727(1)(c), 327 S.E.2d 833 (indemnification claim properly submitted to trier of fact where there was conflicting evidence over whether the indemnitee had an available defense that would have defeated the underlying tort claim). If the uncontroverted evidence of record demonstrates that the indemnitee had such a defense but failed to assert it, the third-party indemnitor is entitled to summary judgment as a matter of law on the claim for indemnification. See Emergency Professionals of Atlanta, P.C., 288 Ga.App. at 475-476(1), 654 S.E.2d 434. The burden is on the indemnitee to come forward with evidence reflecting that he or she could have been held liable in the underlying tort action had the case not been settled. See Pippin, 269 Ga.App. at 25, 602 S.E.2d 911 (burden is on indemnitee to "prove his own liability where that liability has not been established by a judgment") (citation, punctuation and emphasis omitted).
Here, the uncontroverted evidence showed that U.S. Lawns had a defense available which would have defeated the Freeman action but failed to assert it. In her complaint in the underlying tort suit, Freeman generally alleged that she "was seriously injured as a result of the defendants['] negligence when she stepped in a hole on the [bank's] premises." In her interrogatory responses, Freeman clarified that "[t]he hole was located between the ATM and the parking lot, on the curb."[1] However, the "Specifications for Landscape Maintenance Services" found in U.S. Lawns' landscaping contract with the bank reflected that the repair of holes on the curb did not fall within the responsibilities of U.S. Lawns or its subcontractors. U.S. Lawns' representative likewise testified that maintenance of the curb, sidewalk, and parking lot area of the bank, other than the disposal of lawn debris and trash that may have collected there, was not part of U.S. Lawns or Cutting Edge's contractual duties. Nor is there any evidence in the record indicating that the hole was caused by U.S. Lawns or Cutting Edge.
*784 "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." City of Rome v. Jordan, 263 Ga. 26, 27(1), 426 S.E.2d 861 (1993). And a negligence action cannot be maintained if the evidence undisputedly shows that the defendant does not owe the plaintiff a legal duty. Anderson v. Atlanta Committee for the Olympic Games, 273 Ga. 113, 118(5), 537 S.E.2d 345 (2000). Based upon the uncontradicted evidence presented here, U.S. Lawns could have successfully defended itself in the Freeman action on the ground that neither it nor its subcontractor, Cutting Edge, had any legal duty to repair the hole on the curb where Freeman was injured.
U.S. Lawns contends, however, that even if it had a meritorious defense available in the Freeman action, its failure to assert that defense was at least partially the fault of Cutting Edge. According to U.S. Lawns, Cutting Edge had a contractual duty to defend it in the Freeman action and thus was responsible for filing a timely answer on its behalf. As such, U.S. Lawns maintains that its default and resulting settlement with Freeman were consequences of Cutting Edge's negligence, and that, as a result, it should still be able to pursue common law indemnification.
We are unpersuaded. There is no competent evidence indicating that U.S. Lawns notified Cutting Edge before its answer was due that it had been served with the Freeman complaint or that it expected Cutting Edge to file an answer on its behalf; thus, the failure to file a timely answer was solely the fault of U.S. Lawns.[2] While the subcontract between U.S. Lawns and Cutting Edge did not contain an express notice requirement, "[a]n implied term in an agreement exists where it is reasonable and necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they deemed it unnecessary to state." Fisher v. Toombs County Nursing Home, 223 Ga.App. 842, 845(2), 479 S.E.2d 180 (1996) (per curiam). Furthermore, "[i]n Georgia, every contract imposes upon each party a duty of good faith and fair dealing in the performance of their respective duties and obligations." (Punctuation and footnote omitted.) TechBios, Inc. v. Champagne, 301 Ga.App. 592, 595(1)(c), 688 S.E.2d 378 (2009). "This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance." (Punctuation and footnote omitted.) Physician Specialists in Anesthesia, P.C. v. MacNeill, 246 Ga.App. 398, 407(5), 539 S.E.2d 216 (2000).
Based upon these principles, we conclude that Cutting Edge's contractual duty to defend U.S. Lawns carried with it an implied duty for U.S. Lawns to timely notify Cutting Edge when it had been served with a complaint that fell within the indemnification provision and expected a response to the complaint to be filed on its behalf. See Townsend v. Lipman, 277 Ga.App. 326, 328(1), 626 S.E.2d 538 (2006) (implying duty to notify client of settlement offer); Fisher, 223 Ga.App. at 845(2), 479 S.E.2d 180 (implying notice requirement in contract); Ellis v. Brookwood Park Venture, 161 Ga.App. 242, 243-244, 288 S.E.2d 308 (1982) (implying duty to provide notice of intent to renew lease). Here, the only competent evidence of record showed that U.S. Lawns had no communications with Cutting Edge regarding the Freeman complaint until December 2007, long after its answer was due. Thus, contrary to U.S. Lawns' contention, its default and subsequent settlement with Freeman were not the fault of Cutting Edge, which never received timely notice that U.S. Lawns had been served with a complaint by Freeman or that Cutting Edge was expected to answer the complaint on its behalf.
*785 For these reasons, we conclude that despite having a meritorious defense available in the Freeman action, U.S. Lawns failed to assert it by reason of its default and resulting settlement of the negligence claims. Under these circumstances, U.S. Lawns is barred as a matter of law from pursuing its common law indemnification claim against Cutting Edge. See GAF Corp., 246 Ga. at 412, 271 S.E.2d 811; Emergency Professionals of Atlanta, P.C., 288 Ga.App. at 475(1), 654 S.E.2d 434; Pippin, 269 Ga.App. at 26-27, 602 S.E.2d 911; Foster, 173 Ga.App. at 727(1)(c), 327 S.E.2d 833. The trial court therefore committed no error in denying summary judgment to U.S. Lawns and granting it to Cutting Edge on the common law indemnification claim.
2. U.S. Lawns also contends in several related enumerations that the trial court erred in denying its motion for summary judgment and granting Cutting Edge's cross-motion for summary judgment on its claim for contractual indemnification. Again, we disagree.
The subcontract required indemnification for any claim that arose in whole or in part out of Cutting Edge's performance. We addressed a similar contractual provision in Emergency Professionals of Atlanta, P.C., 288 Ga.App. at 476-477(2), 654 S.E.2d 434. In that case, we held that where a defendant goes into default and by reason of that default fails to assert a defense that would have defeated the lawsuit, the liability occasioned by the default does not "arise out of" and is not related to the subcontractor's performance, but, instead, arises from the defendant's own conduct in allowing the default and failing to assert the meritorious defense. Id.
For the reasons discussed in Division 1, U.S. Lawns went into default in the Freeman action and by reason of that default failed to assert a defense that would have defeated the lawsuit. U.S. Lawns, moreover, was solely responsible for the default. Thus, as in Emergency Professionals of Atlanta, P.C., 288 Ga.App. at 476-477(2), 654 S.E.2d 434, the liability occasioned by the default did not "arise out of" Cutting Edge's performance, but, instead, arose solely from U.S. Lawns' own conduct in allowing the default and failing to assert the meritorious defense. It follows that U.S. Lawns' contractual indemnification claim failed as a matter of law, and the trial court committed no error in denying summary judgment to U.S. Lawns and granting it to Cutting Edge on that claim.
Judgment affirmed.
ADAMS and BLACKWELL, JJ., concur.
NOTES
[1] U.S. Lawns contends that the trial court erred in considering the interrogatory responses because they were not answered under oath by Freeman in accordance with OCGA § 9-11-33(a)(2). See Gregory v. King Plumbing, 127 Ga.App. 512(1)(a), 194 S.E.2d 271 (1972). But the parties stipulated during the OCGA § 9-11-30(b)(6) deposition of U.S. Lawns' representative that any filings or pleadings from the Freeman action submitted by the current parties on their cross-motions for summary judgment were admissible without further authentication and could be used in the present case. In light of this stipulation, the interrogatory responses could be used in evidence without the formality of the deponent's signature under oath. See Woodson v. Burton, 241 Ga. 130, 131(1), 243 S.E.2d 885 (1978).
[2] U.S. Lawns relies upon the affidavit of its litigation claims specialist in an effort to establish that it communicated with Cutting Edge about the Freeman complaint in October 2007. But the paragraph of the affidavit addressing those communications relied upon hearsay statements of other persons, and U.S. Lawns does not contend that the testimony was admissible under any exception to the hearsay rule. Accordingly, the hearsay testimony contained in the affidavit was inadmissible and had no probative value for purposes of summary judgment. See White Missionary Baptist Church v. Trustees of First Baptist Church of White, Ga., 268 Ga. 668, 669(1), 492 S.E.2d 661 (1997).