**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2016**

# In the Court of Appeals of Georgia

A16A1249.  SAXON  v.  STARR  INDEMNITY  &  LIABILITY COMPANY et al.

RICKMAN, Judge.

In this declaratory judgment action, Gregory Saxon appeals from three trial court orders granting summary judgment in favor of three insurance companies – Starr Indemnity & Liability Company ("Starr Indemnity"), First Acceptance Insurance Company of Georgia, Inc. ("First Acceptance"), and Knightbrook Insurance Company ("Knightbrook"). We affirm.

The material facts of this case are undisputed. Talmadge Royal d/b/a Sno Frost was involved in the business of selling ice cream freezers and ice cream to convenience stores. Royal's ice cream truck usually went on deliveries with one employee driver and one employee helper, and the two often switched duties from

day to day. On November 9, 2012, Saxon and Arron Meyers were employed by Royal as delivery drivers, and rode together to make deliveries – Meyers as driver and Saxon as helper. As they were en route to make some final deliveries, Meyers struck the rear of a vehicle which was stopped at a red traffic light, and he was cited for following too closely. At the time of the accident, Saxon and Meyers were employees of Royal and were performing duties in the course and scope of and/or related to their employment with Royal. At the time of the accident, although Royal had three or more employees[1] and was subject to the Georgia Workers' Compensation Act (the "Act"),[2] he had not procured workers' compensation coverage. Saxon did not file a claim for workers' compensation benefits with the State Board of Workers' Compensation, and he received no workers' compensation benefits.

On November 21, 2013, Saxon filed a complaint for damages ("tort action") against Meyers and Royal. He asserted a claim for negligence against Meyers, and claims for imputed liability and for negligent hiring, training, and supervision, and

___

[1] See OCGA § 34-9-2 (a) (2) (2012) ("This chapter shall not apply to . . . any person, firm, or private corporation . . . that has regularly in service less than three employees in the same business within this state . . . ."). In addition to the accident occurring in 2012, the policies of all three insurance companies involved were issued in 2012.

[2] See OCGA § 34-9-1 et seq. (2012).

2

negligent entrustment against Royal. In January 2014, Starr Indemnity, which company provided liability insurance to Royal for Royal's truck that was involved in the accident, filed the instant petition for declaratory judgment. Starr Indemnity sought a judgment declaring that under its liability policy, there were no coverage benefits available for damages in the tort action. In February 2015, the trial court granted First Acceptance's motion to intervene in the declaratory judgment action; First Acceptance provided liability insurance to Meyers for Meyers's personal automobile. In March 2015, the trial court granted Knightbrook's motion to intervene in the declaratory judgment action; Knightbrook had issued an insurance policy to Saxon for Saxon's personal vehicles, and that policy provided uninsured motorist coverage. Saxon sought indemnity or liability coverage benefits under the policies issued by Starr Indemnity and First Acceptance. Saxon sought uninsured motorist benefits from Knightbrook.

All three insurance companies moved for summary judgment, arguing that certain provisions in their respective policies excluded coverage for damages Saxon sought in the tort action,[3] and that the Act provided Saxon's exclusive remedy. Saxon

---

[3] Starr Indemnity's policy contained provisions excluding coverage for workers' compensation obligations for which Royal may liable, and for bodily injury to Royal's employees or fellow employees, arising out of and in the course of

did not dispute the plain language of the policies' exclusion provisions, or of the Act. Rather, he argued that if the Act and the policies' exclusion provisions were enforced, he would be left without a remedy and such a result would be against public policy. This is also Saxon's argument on appeal.

In well-reasoned and detailed orders, the trial court granted summary judgment in favor of all three insurance companies. With regard to Starr Indemnity and First Acceptance, the trial court correctly ruled that the Act provided Saxon's exclusive remedy, that there was no applicable exception to the exclusive remedy provision of the Act, and that in this case enforcement of the Act and of the policies' exclusion provisions did not violate public policy. With regard to Knightbrook, the trial court reiterated that the Act provided Saxon's exclusive remedy, and concluded that given that Saxon could not recover in the tort action as a matter of law because the Act provided his exclusive remedy, he could not recover UM benefits from Knightbrook.

---

employment. First Acceptance's policy contained a provision similarly excluding coverage for the insured's employee and fellow employee; it additionally contained a business-use exclusion provision. The policy issued by Knightbrook contained a workers' compensation obligation exclusion provision and a business-use exclusion provision.

1. On appeal, Saxon contends that the trial court erred in granting summary judgment in favor of the insurance companies when enforcement of the Act in this case violates public policy because "injured parties would be unfairly punished just because they were employed by someone who breached his or her duty to purchase worker's compensation insurance."

Saxon had one year after his injury to file a claim for workers' compensation benefits with the State Board of Workers' Compensation. See OCGA § 34-9-82 (a) (2012). But Saxon failed to do so in this case. And despite Royal's failure to procure workers' compensation coverage, relief under the Act was Saxon's only available remedy.

OCGA § 34-9-11 (a) (2012) pertinently provides as follows.

> *The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee*, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, *other than an employee of the same employer* . . . .

(Emphasis supplied). "[I]t has been held repeatedly that [OCGA § 34-9-11] grants the injured employee's employer statutory immunity from suit by the employee to recover

damages *other than workers' compensation benefits*," and it has also been made clear that this "statutory immunity from suit includes the statutory employer regardless whether that statutory employer had actually paid the workers' compensation benefits." (Citations omitted; emphasis supplied) *Modlin v. Swift Textiles, Inc.*, 180 Ga. App. 726, 731 (2) (350 SE2d 273) (1986).

> The Act requires that employers insure the payment of workers' compensation benefits to injured workers, either by procuring insurance or by qualifying as a self-insurer. If no insurance is obtained, the employer remains liable for payment of benefits. If the employer becomes insolvent, then the agent of the employer responsible for procuring workers' compensation benefits may be held personally liable for payment of such benefits [awarded by the State Board of Workers' Compensation].

(Citations omitted.) *Sheehan v. Delaney*, 238 Ga. App. 662 (1) (521 SE2d 585) (1999); see *Samuel v. Baitcher*, 247 Ga. 71-72, 74 (274 SE2d 327) (1981).

Therefore, contrary to Saxon's contention, an injured party would not be unfairly punished, because an employer (or employer's agent) who failed to obtain insurance would remain liable for payment of benefits awarded by the Board.[4]

---

[4] Saxon's further argument that Georgia should mirror other states and provide an exception to the Act's exclusive remedy provision was not made below, and therefore, we will not consider it on appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275

6

2. Saxon also contends that the trial court erred in granting summary judgment in favor of the insurance companies when enforcement of the policies' exclusion provisions violates public policy because such enforcement would "not protect [him] as to his actual losses." In *Southern Guaranty Ins. Co. v. Preferred Risk Mut. Ins.*, 257 Ga. 355, 356 (359 SE2d 665) (1987), the Supreme Court of Georgia held:

> If the compensation of victims were the overriding consideration in every case, we would conclude that no exclusion is possible in automobile liability policies. However, since Georgia law does not require liability insurance in every case, we have concluded that exclusions are not per se prohibited but must be individually evaluated to determine whether they are against public policy.

(Citation omitted.) Such an evaluation requires that we determine "whether in the context of [each] case the exclusion either unfairly penalizes innocent victims or unfairly exposes the insured to liability" Id. "This results in a basic rule that if either of the interests dealt with is left unprotected, the exclusionary clause in the insurance contract offends public policy. This rule, of course, does not, apply when neither the injured party nor the unsuspecting insured is left unprotected." (Citation and

---

Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[A]n appellate court need not consider arguments raised for the first time on appeal.") (footnote omitted).

7

punctuation omitted.) *Federated Mut. Ins. Co. v. Dunton*, 213 Ga. App. 148, 149 (1) (444 SE2d 123) (1994).

Given that in the instant case, the remedy of the Act was available to Saxon, he was not left unprotected. Indeed, Saxon's complaints about the Act are not about being left unprotected; he complains about not being "*adequately* compensate[d] . . . for his injuries,"[5] about not being protected as to his "actual losses," and about the lack of a "realistic remedy at law," particularly because, as he claims, the procedures of the Act are cumbersome and enforcing any judgment obtained by the Board "can be extremely difficult or impossible due to extenuating circumstances such as businesses closing, bankruptcy, or corporate shell games." Saxon's complaints about the Act are for the General Assembly's determination, not this Court. Even assuming that any of the foregoing allegedly difficult or impossible circumstances could work to bar enforcement of the policies' exclusion provisions, Saxon did not assert or show, either below or on appeal, that any of those circumstances existed in this case, and his guesses or speculation about them are insufficient on summary judgment. See *Heath v. Rush*, 259 Ga. App. 887, 888 (578 SE2d 564) (2003) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create

---

[5] (Emphasis supplied.)

8

even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted). As the trial court recognized, "the [p]olicy exclusions 'dovetail' with the statutory immunity provided . . . under the Act" and are not against public policy. Compare generally *Govt. Employees Ins. Co. v. Dickey*, 255 Ga. 661 (340 SE2d 595) (1986) (family-purpose exclusion in automobile insurance policy purchased in Georgia was against public policy where it was broader than the tort immunity of the state in which the insured was sued, North Carolina).

3. Saxon argues that enforcement of the policies' exclusion provisions would violate federal and Georgia public policy of requiring statutory compulsory minimum automobile limits coverage.

Saxon cites *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557 (307 SE2d 499) (1983), wherein the Supreme Court of Georgia iterated "the public policy of our state, enunciated in the advent of compulsory motor vehicle liability insurance[] [is] that innocent persons who are injured should have an adequate recourse for the recovery of their damages." (Citations omitted.) As previously addressed, Saxon did not point to any evidence showing that in this case the remedy available to him (the Act) was inadequate. Additionally, Saxon did not cite any federal public policy that was violated by enforcing the policies' exclusion

provisions. The policies' exclusion provisions are consistent with Georgia's liability and Workers Compensation statutes, and are enforceable. See generally *Williams v. Lumbermens Mut. Cas. Co.*, 164 Ga. App. 435 (297 SE2d 345) (1982).

4. Saxon relies on *Hudson v. Whited*, 250 Ga. App. 451 (552 SE2d 447) (2001), as support that UM coverage is available in this case. But Saxon's reliance on *Hudson* is misplaced. A third-party as tortfeasor was not specifically pointed out in *Hudson*; but given the reference in *Hudson* to "the discovery process and trial of this case," Id. at 454, and given the Act's grant of tort immunity for employers and co-employees, see OCGA § 34-9-11 (a) (2001), the discussion in *Hudson* regarding UM coverage necessarily presumed the existence of a third-party tortfeasor, which is not present in the instant case. See, e.g., *Lewis v. Cherokee Ins. Co.*, 258 Ga. 839 (375 SE2d 850) (1989). Accordingly, the discussion in *Hudson*, about the enforceability of a clause that could thwart an insured's ability to recover all sums to which he could be legally entitled, does not apply to the instant case.[6] *Hudson*, 250 Ga. App. at 452-454.

---

[6] Although Saxon claims that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether he properly notified Knightbrook of the car collision, we deem this claim abandoned, as Saxon did not present any argument or citation of authority on that issue in his brief. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.") ; see also *Johnson v. State*, 290 Ga. App. 255, 259 (1) (d) (659 SE2d 638) (2008) (deeming

Saxon failed to meet his burden on summary judgment, see generally *Canaan Land Properties v. Herrington*, 330 Ga. App. 17 (766 SE2d 493) (2014) (nonmovant must point to specific evidence giving rise to a triable issue), and the trial court did not err in granting summary judgment in favor of the insurance companies.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*

---

abandoned an argument that was unsupported by citation to authority).