**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 24, 2025

# In the Court of Appeals of Georgia

A25A0123. DIAZ ARRIOLA v. COLEMAN et al.

LAND, Judge.

This is an appeal from a grant of summary judgment to Keith Coleman and his insurance agency ("defendants") in plaintiff Vinicio Diaz Arriola's suit for negligence, breach of contract, and vicarious liability arising from his loss of a lower arm in a workplace accident. On appeal, plaintiff argues that the trial court erred in excluding testimony from the company owner and an expert witness and that a genuine issue remains concerning defendants' negligence in allowing a lapse in the company's comprehensive general liability (CGL) coverage. We find no error and affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the

nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

Although we view the record in favor of plaintiff, the relevant facts are not in dispute. Storm Safe, a tree removal company, was formed in 2011 by Robert Byrd. Plaintiff joined Storm Safe as the fourth man on its work crew by January 2015, driving the chipper truck and assisting in feeding brush into the chipper. Plaintiff earned a flat rate per day, with checks issued at the end of each week. Storm Safe also had two office workers, including Byrd's wife. Coleman, Storm Safe's insurance agent, provided Byrd with an application for workers compensation insurance and advised him that he needed the coverage, but Byrd did not return the application.

Coleman had previously helped Byrd obtain a CGL policy, which went into effect on January 24, 2014, for a period of one year and provided $1 million per occurrence for bodily injury. The CGL policy contains an employer's liability exclusion and endorsement, however: "This insurance does not apply to: . . . '[b]odily injury' to any 'employee' of any insured arising out of or in the course of: (a)

[e]mployment by any insured; or (b) [p]erforming duties related to the conduct of any insured's business[.]" The main portion of the policy defines "employee" as including a "leased worker" but not a "temporary worker," which is also defined as "a person who is furnished to [the insured] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." The relevant endorsement, however, substitutes its own definition of "employee" as "includ[ing], but . . . not limited to any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor."

After the insurer sent a renewal application to the wrong email address, the CGL policy lapsed on January 24, 2015. A renewal policy containing identical relevant terms was eventually issued on March 27, 2015. In the meantime, however, on March 24, 2015, plaintiff drove the crew to a work site and, while oiling the chipper, placed his hand in an air intake valve rather than on a handle, resulting in the severing of his left arm just below the elbow.

In April 2015, plaintiff filed a workers' compensation claim naming Storm Safe as his employer. On December 14, 2016, after learning that Storm Safe did not have workers' compensation insurance at the time of the accident, plaintiff filed a

negligence action against Storm Safe. The company did not file an answer, and an $8 million default judgment against it was entered on March 23, 2017. In late 2018, Byrd and Storm Safe assigned any cause of action they might have against defendants to plaintiff in exchange for $25,000 and a reduction in the default judgment to $3 million. On December 13, 2018, plaintiff filed the instant action against defendants for negligence, breach of contract, and vicarious liability arising from Storm Safe's lack of workers' compensation coverage and the lapse in its CGL coverage.

In his September 2019 deposition, Byrd testified that "[t]he reason that I didn't have [workers' compensation insurance] before is [be]cause I couldn't afford it; and after going through everything I just went through, I still can't afford it. Okay. It's not possible." After defendants moved for summary judgment in November 2019, however, plaintiff filed an affidavit in which Byrd averred for the first time that he "would have bought [workers' compensation insurance]" if Coleman had "explained to [him] that Storm Safe was not covered by the [CGL] policy against lawsuits from employees injured on the job" and that he had needed workers' compensation insurance "to protect Storm Safe from liability claims from injured employees." Plaintiff also filed an affidavit from Tim Ryles, a former Insurance Commissioner, who averred that Coleman was negligent in allowing the CGL policy, which in his

judgment would have covered plaintiff's injuries because he was a "temporary worker," to lapse, and in failing to obtain workers' compensation coverage for Storm Safe.

The trial court struck Byrd's affidavit under the *Prophecy*[1] rule because it "directly contradicted" his deposition testimony as to why Storm Safe did not procure workers' compensation insurance. The trial court also struck the Ryles affidavit on the ground that its conclusions were either legal or speculative. The trial court granted defendants' motion for summary judgment on the grounds that plaintiff was not a "temporary worker" covered by the policy; that the failure to obtain workers compensation coverage was the fault of Byrd, not defendants; and that workers' compensation "was the exclusive remedy for the plaintiff's injury."

1. The crux of this appeal is plaintiff's assertion that the grant of summary judgment was erroneous because issues of material fact remain concerning defendants' negligence in allowing the CGL policy to lapse and in failing to convince Byrd to obtain a workers' compensation policy. We disagree.

---

[1] See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2)-(3) (343 SE2d 680) (1986) (barring a party's self-contradictory and unexplained testimony from consideration on motion for summary judgment).

OCGA § 34-9-11 (a) establishes workers' compensation as the exclusive remedy, barring exceptions not applicable here, for on-the-job injuries:

> The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, parents, dependents, or next of kin, and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death[.]

This "'statutory immunity from suit includes the statutory employer *regardless whether that statutory employer had actually paid* the workers' compensation benefits.'" (Emphasis supplied.) *Saxon v. Starr Indem. & Liability Co.*, 339 Ga. App. 495, 497 (1) (793 SE2d 659) (2016), quoting *Modlin v. Swift Textiles, Inc.*, 180 Ga. App. 726, 731 (2) (350 SE2d 273) (1986).

Given the CGL policy endorsement's expansive definition of "employee,"[2] we find it unnecessary to determine whether plaintiff is properly considered a "temporary worker." All versions of the CGL policy at issue explicitly exclude coverage for injuries falling under the purview of the workers' compensation law. And summary

---

[2] Again, "includ[ing], but … not limited to any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor[.]"

6

judgment is properly granted to an insurer when an insured's policy contains an applicable exclusion that is not against public policy. See *Saxon*, 339 Ga. App. at 498-499 (2), (3) (workers' compensation was plaintiff's exclusive remedy for a work-related injury; uninsured motorist provisions were "consistent with Georgia's liability and workers' compensation statutes" and thus enforceable).

Here, it is undisputed that Storm Safe regularly operated four-man crews in the weeks preceding plaintiff's injury as well as on the day in question and that plaintiff suffered that injury in the course of his employment. The Workers' Compensation Act thus applied to plaintiff's claim, and the exclusion in the CGL policy would apply had that policy not lapsed. See OCGA §§ 34-9-1 (3) - (4) (applying law to private companies) and 34-9-2 (a) (2) (excluding business "that has regularly in service less than three employees in the same business within this state"); *Wills v. Clay Cty.*, 339 Ga. App. 79, 80-81 (1) (793 SE2d 432) (2016) (a business was subject to the Act because it had three or more employees two to three times a year). Thus, even if we were to accept as true the allegation that the defendants were negligent in allowing the CGL policy to lapse, that assumed negligence did not cause this claim to go uncovered. Where the Act applies, moreover, "it provides the employee's exclusive remedy against the employer." *Vratsinas Constr. Co. v. Chitwood*, 314 Ga. App. 357,

7

359-360 (723 SE2d 740) (2012) (reversing denial of summary judgment to construction company where plaintiff employee's tort claim was barred under the exclusive-remedy provision of the workers' compensation statutes).

Further, as an employer subject to the Act, Storm Safe had the right to a dismissal of plaintiff's action against it as a matter of law. See *Teasley v. Freeman*, 305 Ga. App. 1, 5-6 (2) (699 SE2d 39) (2010) (affirming dismissal of employee's suit against employer based on the exclusive remedy provision of the Act). Instead of asserting this right to a dismissal, Storm Safe failed to answer the lawsuit and allowed it to go into default, leading to the entry of the default judgment that is now at the heart of plaintiff's claims against the defendants. Under these circumstances, plaintiff's attempt to recover the damages resulting from the default judgment from Coleman and his agency fails for the simple reason that the defaulting defendant had a dispositive defense that would have terminated the underlying action in its favor but failed to assert that defense. See *Emergency Professionals of Atlanta, P. C. v. Watson*, 288 Ga. App. 473, 475 (1) (654 SE2d 434) (2007) (affirming a grant of summary judgment to third-party defendants when the defaulting defendant now seeking contribution and indemnity "had a defense available to it which would have defeated the [original] action but failed to assert that defense"); *Rogers v. Newell*, 174 Ga. App.

8

453, 458 (2) (330 SE2d 392) (1985) (because plaintiffs settled lawsuit that could have terminated in their favor, "the proximate cause of plaintiffs' potential loss was not the actions of defendants but their voluntary settlement with the tortfeasor's insurance carrier"). Because plaintiff, as the assignee of Storm Safe's claims, took the claims subject to all defenses that would have been good against Storm Safe had it pursued an action against Coleman and his agency, the proximate cause defense that would have barred Storm Safe's claims also bars plaintiff's claims. *Pridgen v. Auto-Owners Ins. Co.*, 204 Ga. App. 322, 322 (419 SE2d 99) (1992) (affirming the grant of a defendant's motion to dismiss when an assignee took the assignment of a claim "subject to defenses against the assignor"; defendant was entitled to assert a statute of limitation defense against the assignee just as it would have against the assignor).

For all these reasons, the trial court did not err when it granted summary judgment to defendants.

2. In light of our disposition of the case in Division 1, we need not reach plaintiff's additional contentions.

*Judgment affirmed. Dillard, P.J., and Mercier, C. J., concur.*