**INSITUFORM TECHNOLOGIES, INC., et al., Plaintiffs,**

v.

**AMERIK SUPPLIES, INC., et al., Defendants,**

v.

**Cosmic–Sondermaschinenbau GmbH, Third–Party Defendant.**

**Civil Action No. 1:08–cv–333–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

March 29, 2012.

---

Benjamin R. Askew, Dean L. Franklin, Matthew Arthur Braunel, Michael L. Nepple, Thompson Coburn, LLP, St. Louis, MO, Jeffrey C. Morgan, Puja Patel, Troutman Sanders, LLP, Atlanta, GA, for Plaintiffs.

Daniel Arthur Kent, Kent Law, P.C., Alpharetta, GA, Geoffrey Kirkland Gavin, Matthew Mahoney Lubozynski, Steven D. Moore, William Henry Boice, Kilpatrick

Townsend & Stockton, LLP, Atlanta, GA, for Defendants and Third–Party Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on the unresolved portions of AMerik Supplies, Inc. and Erik Nielson's renewed motion for entry of final judgment [709]; AMerik Supplies, Inc. and Eric Nielson's motion for partial reconsideration or clarification of the Court's June 8, 2011 order [805]; and Cosmic–Sondermaschinenbau, GmbH's motion for reconsideration of the Court's June 8, 2011 order [808].

## I. Background

### A. Overview of the Case

This is a patent-infringement suit that began in the U.S. District Court for the Eastern District of Virginia in November 2007. The original Plaintiffs were Insituform Technologies, Inc. and Insituform (Netherlands), B.V., Inc. (collectively, "Insituform").[1] The original Defendants were AMerik Supplies, Inc. and its CEO, CFO and secretary, Erik Nielson (collectively, "AMerik").[2]

Insituform holds several patents relating to a process it developed to repair sewage pipelines without incurring the expenses normally associated with such repair. In particular, Insituform's process allows pipelines to be repaired without the expense or inconvenience of digging into the ground. This is accomplished by installing a "cured-in-place pipeline" or "CIPP." A CIPP is a flexible liner that is soaked in resin and inserted into an existing pipeline. When the resin cures, the CIPP hardens to form a "pipe within a pipe," thus restoring the structural integrity of the pipeline.

AMerik was formerly one of several U.S. companies that sold a competing CIPP product manufactured by an Austrian company called Cosmic–Sondermaschinenbau, GmbH ("Cosmic"). Insituform claims that Cosmic's CIPP product, known as the Cosmic "Top Hat," infringes its valid and enforceable U.S. patents.

### B. AMerik's Indemnity Claims and Cosmic's Defaults

On December 10, 2007, while the case was still proceeding in the Eastern District of Virginia, AMerik filed a third-party complaint against Cosmic, seeking indemnity for any liability it might have to Insituform for patent infringement. The third-party complaint asserts the following claims against Cosmic: (1) breach of contract; (2) breach of the implied warranty against infringement, O.C.G.A. § 11–2–312; and (3) equitable indemnification. It also includes a general prayer for attorneys' fees.

On January 29, 2008, AMerik filed a separate action in this Court, seeking a declaratory judgment that Insituform's patents were invalid, unenforceable or not infringed, and asserting four claims against Cosmic. That complaint will hereinafter be referred to as the "declaratory-judgment complaint." The four claims against Cosmic in the declaratory-judgment complaint consist of the same three indemnity claims asserted in AMerik's

---

1. Insituform (Netherlands), B.V., Inc. later assigned its rights in the patents-in-suit to INA Acquisition Corp., and INA Acquisition Corp. was substituted for Insituform (Netherlands), B.V., Inc. as a party-Plaintiff in this action. However, Plaintiffs continue to refer to themselves collectively as "Insituform," and the Court will do the same.

2. AMerik Engineering, LLC was later added as a Defendant. However, for purposes of this order, all references to "AMerik" refer only to AMerik Supplies, Inc. and Erik Nielson, not to AMerik Engineering, LLC.

third-party complaint, plus an additional claim under Georgia's vouchment statute, O.C.G.A. § 9–10–13.[3] The declaratory-judgment complaint also includes a general prayer for attorneys' fees.

On January 30, 2008, 2008 WL 276404, Insituform's patent-infringement action (along with AMerik's third-party claims) was transferred from the Eastern District of Virginia to this Court. The case was later consolidated with AMerik's declaratory-judgment action.

On March 3, 2008, the Clerk entered default against Cosmic on AMerik's third-party complaint because Cosmic failed to plead or otherwise defend. Three days later, the Clerk entered default against Cosmic on AMerik's declaratory-judgment complaint for the same reason.

On April 18, 2008, Cosmic made its first appearance in the litigation by moving to set aside the defaults, arguing that it had not been served. However, the evidence showed that Cosmic's president and CEO, Johann Kübel, was served with copies of AMerik's complaints on January 29, 2008 and that he was otherwise aware of the litigation. The Court found that Cosmic had demonstrated an intentional or reckless disregard for the judicial proceedings and that it had otherwise failed to show good cause for setting aside the defaults. Thus, the motion was denied.

## C. Insituform's Claims Against Cosmic, Cosmic's Participation in the Lawsuit, and the Court's Sanction of Default

On April 15, 2008, Insituform filed an amended complaint, adding patent-infringement claims directly against Cosmic. Cosmic timely filed an answer that included counterclaims against Insituform for declaratory relief, seeking to establish that Insituform's patents were invalid, unenforceable or not infringed.

After filing its answer, Cosmic actively defended against Insituform's claims by, inter alia, participating in discovery, responding to Insituform's motion for a more definite statement on Cosmic's counterclaims, filing an amended answer after the Court granted Insituform's motion for a more definite statement, and responding to Insituform's infringement contentions pursuant to Patent L.R. 4.2.

On January 21, 2009, after obtaining leave of Court, Insituform filed a second amended complaint, adding several new Defendants but bringing the same patent-infringement claims against Cosmic. After receiving an extension, Cosmic timely filed an answer to the second amended complaint, again asserting counterclaims for declaratory relief to establish that Insituform's patents were invalid, unenforceable or not infringed.

After filing its answer to Insituform's second amended complaint, Cosmic continued to actively defend against Insituform's claims by, inter alia, participating in additional discovery, serving a disclosure of invalidity contentions pursuant to Patent L.R. 4.3, filing a claim-construction brief, responding to Insituform's claim-construction brief, participating in a claim-construction hearing, and filing a post-hearing brief.

On August 26, 2009, Insituform moved for entry of default judgment against Cosmic as a sanction for discovery misconduct. The motion argued that an entry of default was appropriate because, inter alia, Cosmic had not permitted Insituform to fully inspect its Austrian facilities despite being ordered to do so, and Cosmic had withheld

---

**3.** The declaratory-judgment complaint itself incorrectly identifies the Georgia vouchment statute as O.C.G.A. § 9–10–93.

information in response to an interrogatory that the Court had ordered it to answer.

On February 19, 2010, after extensive briefing, the Court denied Insituform's motion for entry of default. The Court found that Cosmic was guilty of bad-faith discovery misconduct but concluded that lesser sanctions would suffice. Specifically, the Court ordered Cosmic to pay the attorneys' fees Insituform incurred as a result of Cosmic's discovery misconduct. After Insituform submitted a statement of those fees and Cosmic had an opportunity to respond, the Court ordered Cosmic to pay Insituform $441,148.97 by May 3, 2010.

On May 28, 2010, Insituform moved for reconsideration of the Court's February 19, 2010 order based on Cosmic's failure to pay any of its attorneys' fees. On November 22, 2010, the Court granted Insituform's motion for reconsideration. The Court found that although Cosmic had ample opportunity, it failed to make any payment toward Insituform's attorneys' fees or to demonstrate an inability to pay. As a result, the Court found it necessary to impose a more severe sanction and entered default against Cosmic on Insituform's second amended complaint.

## D. Insituform's Claims Against Southwest Pipeline and Southwest Pipeline's Indemnity Action Against AMerik

As previously mentioned, Insituform's second amended complaint added claims against several new Defendants. One of those Defendants is Southwest Pipeline and Trenchless Corporation. Insituform alleges that Southwest purchased Cosmic Top Hats from Cosmic and/or AMerik and resold or installed them in the United States, thus infringing Insituform's patents.

On August 30, 2010, Southwest filed a separate action against AMerik in this Court,[4] seeking indemnity for any liability it may have to Insituform based on the Top Hats it purchased from AMerik. On February 4, 2011, the Court entered a consent judgment pursuant to a settlement agreement between Southwest and AMerik.

## E. AMerik's Settlement with Insituform and Cosmic's Motion to Set Aside the Consent Judgment

On September 23, 2009, the Court entered a consent judgment pursuant to a settlement agreement between Insituform and AMerik.[5] In the consent judgment, AMerik stipulates that it sold 15,399 Cosmic Top Hats and that those Top Hats infringed Insituform's patents. The consent judgment also provides that AMerik is obligated to pay Insituform a royalty of $200 per Top Hat sold, or $3,079,800, plus $1,782,241.24 in attorneys' fees, for a total of $4,862,041.24.

Under the Insituform/AMerik settlement agreement, Insituform has agreed to forbear from collecting on the consent judgment, so long as AMerik (1) diligently pursues a final judgment on its indemnity claims against Cosmic, and (2) if such a judgment is obtained, promptly assigns its rights under the judgment to Insituform.

On October 7, 2009, Cosmic moved to set aside the consent judgment. Among other things, Cosmic argued that its due process rights would be violated if the consent judgment were later used to determine the amount of AMerik's indemnity damages.[6]

---

**4.** Civil Action No. 1:10–cv–2717–TCB.

**5.** All references to "the consent judgment" throughout the remainder of this order will refer to the consent judgment between Insituform and AMerik.

**6.** In its response brief, Insituform argued that Cosmic would not be bound by the amount of damages in the consent judgment.

Cosmic further argued that the Court lacked subject-matter jurisdiction over AMerik's indemnity claims and that with respect to those claims, "the propriety of applying Georgia law [had] yet to be determined."

Cosmic's motion to set aside the consent judgment was denied with leave to refile when the Court stayed the case on March 29, 2010. Cosmic has not renewed the motion, but as discussed below, it has incorporated the motion's arguments into its opposition to AMerik's renewed motion for entry of final judgment.

### F. Damages Briefing, AMerik's Renewed Motion for Entry of Final Judgment, and the Court's June 8, 2011 Order

When the Court entered default against Cosmic on Insituform's second amended complaint, it also directed the parties to brief and submit evidence regarding the amount of the default judgments to be entered against Cosmic on both Insituform's and AMerik's claims. In response, Insituform filed a separate damages brief, while AMerik chose to address the damages issue in its brief in support of its renewed motion for entry of final judgment.[7]

In its renewed motion for entry of final judgment, AMerik argued that it was entitled to an indemnity award equal to its liability to Insituform under the consent judgment, plus the attorneys' fees it incurred (1) defending against Insituform's patent-infringement claims and Southwest Pipeline's indemnity claims, and (2) prosecuting its indemnity claims against Cosmic. AMerik argued that vouchment principles

barred Cosmic from challenging the damages established by the consent judgment.

In response, Cosmic argued that the consent judgment could not be used to determine the amount of damages on AMerik's indemnity claims because vouchment principles were inapplicable and because doing so would be inconsistent with due process. Cosmic further argued that any award of AMerik's attorneys' fees should be limited to the fees AMerik incurred defending against Insituform's claims and should not include the fees it incurred prosecuting its indemnity claims against Cosmic.[8]

On June 8, 2011, after extensive briefing and a hearing, the Court issued an order on damages. With respect to Insituform's claims against Cosmic, the Court calculated a reasonable royalty of $136 per Top Hat sold. The Court then multiplied that royalty by 29,516 sales, subtracted $51,600 for royalties already paid to Insituform, and determined that it would enter a default judgment against Cosmic and in favor of Insituform in the amount of $3,962,576. The Court also held that Insituform would be entitled to recover costs, as well as pre- and post-judgment interest, but declined to award enhanced damages or attorneys' fees.

With respect to AMerik's indemnity claims, the Court agreed with Cosmic that vouchment principles were inapplicable and that using the consent judgment to establish damages would be inconsistent with due process. The Court also held that judicial estoppel precluded AMerik from asserting the consent judgment against Cosmic.[9] Ultimately, the Court held that AMerik's indemnity award would

---

**7.** AMerik originally moved for entry of final judgment on its indemnity claims in October 2009, but that motion was denied with leave to refile when the Court stayed the case on March 29, 2010.

**8.** Cosmic has since conceded that AMerik may also recover the fees it incurred defend-

ing against Southwest Pipeline's indemnity claims.

**9.** The Court's judicial-estoppel analysis proceeded as follows. First, the Court noted that in response to Cosmic's motion to set aside the consent judgment, Insituform argued that Cosmic would not be bound by the

be determined by the reasonable royalty it had already calculated, i.e., $136 per Top Hat sold, but noted that this amount would be subsumed within the amount already awarded to Insituform. Finally, the Court deferred ruling on the issue of AMerik's attorneys' fees. Thus, the Court has yet to enter a default judgment on AMerik's claims.

## G. Motions for Reconsideration and Remaining Issues

On July 11, 2011, both Cosmic and AMerik filed motions for reconsideration of the Court's June 8, 2011 order on damages. Cosmic's motion contends that the reasonable royalty the Court calculated should be reduced from $136 to $43.69. AMerik's motion (1) challenges the Court's conclusion that the amount of damages on AMerik's indemnity claims are not to be determined by the consent judgment, and (2) asks for clarification of the Court's statement that AMerik's damages would be subsumed within the amount awarded to Insituform.

The following issues will be resolved in this order. First, the Court will evaluate Cosmic's motion for reconsideration and determine whether the reasonable royalty it previously calculated should be adjusted. Second, the Court will address the unresolved portions of AMerik's renewed motion for entry of final judgment, taking into account the arguments in AMerik's motion for reconsideration. That analysis will begin by addressing several issues relating to the Court's authority to enter a

consent judgment. Second, the Court noted that under the Insituform/AMerik settlement agreement, Insituform would be the true beneficiary of any judgment in favor of AMerik. Finally, given that the Court may have set aside the consent judgment absent Insituform's representation that it would not bind Cosmic, the Court held that Insituform could not subsequently change its position, even if it purported to do so via AMerik.

default judgment that have been raised by Cosmic but not previously addressed by the Court. It will then determine the amount of indemnity damages and attorneys' fees to be awarded to AMerik and the relationship of those damages to Insituform's patent-infringement damages. Finally, the Court will discuss what remains to be done to effect the entries of final judgment on Insituform's and AMerik's claims and will direct the parties accordingly.

## II. Cosmic's Motion for Reconsideration

In its June 8, 2011 order, the Court held that the reasonable royalty used to determine Insituform's damages would be $136, which is equal to 3.4% of $4,000, the average price of a lateral-liner installation.[10] In its motion for reconsideration, Cosmic argues that Insituform's damages should be based on the average price of installing a Top Hat by itself, rather than a complete lateral-liner installation, which typically implicates patent rights in addition to those infringed by the Top Hat. Cosmic then analyzes the limited record evidence regarding Top Hat installations and concludes that the average price of such an installation is about $1,285. Then, using the same 3.4% royalty rate used by the Court, Cosmic argues that the reasonable royalty used to determine Insituform's damages should be reduced to $43.69 per unit.

Cosmic's motion was filed on July 11, 2011,[11] thirty-three days after the Court's

10. A lateral-liner installation is a repair of a lateral pipeline using Insituform's patented CIPP process.

11. On July 11, 2011, Cosmic filed a redacted copy of its motion for reconsideration and requested leave to file an unredacted copy under seal. On July 14, 2011, the Court granted Cosmic's request, and the unredacted motion was filed under seal. The Court con-

June 8, 2011 order. In response, Insituform argues that the motion should be denied as untimely and because it does not raise appropriate grounds for reconsideration. Insituform does not address the substance of the motion. As discussed below, the Court finds that the motion was timely and that, at least in theory, it raises arguments appropriate to a motion for reconsideration. However, the motion will be denied on the merits.

## A. Timeliness of Cosmic's Motion

Insituform first argues that Cosmic's motion for reconsideration should be denied as untimely because it was filed more than twenty-eight days after the Court entered its June 28, 2011 order. Insituform relies on Federal Rule of Civil Procedure 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED.R.CIV.P. 59(e). Insituform also relies on Local Rule 7.2E, which provides that motions for reconsideration must be filed "within twenty-eight (28) days after entry of the order or judgment."

■ In response, Cosmic argues that Rule 59(e) is inapplicable because the Court's June 8, 2011 order was not a "judgment" within the meaning of that rule. Thus, Cosmic contends that the only relevant time limit is that of Local Rule 7.2E. This distinction is potentially important for two reasons. First, a district court has no discretion to extend the time to act under Rule 59(e). FED.R.CIV.P. 6(b)(2). However, it does have discretion to consider motions that do not comply with the local rules. LR 7.1F, NDGa.

Second, the grant of three additional days to act after certain types of service under Federal Rule of Civil Procedure 6(d) does not apply to motions filed under Rule 59(e). *Jackson v. Crosby*, 375 F.3d 1291, 1293 n. 5 (11th Cir.2004). But, according to Cosmic, Rule 6(d) can extend the time established by Local Rule 7.2E to file a motion for reconsideration.

As an initial matter, Cosmic's assertion that Rule 6(d) may extend the time to file a motion for reconsideration under Local Rule 7.2E is incorrect. Rule 6(d) applies only if a party must act "within a specified time after service." Local Rule 7.2E, in contrast, requires that motions for reconsideration be filed within twenty-eight days "after entry of the order or judgment." Rule 6(d) is simply not implicated by that deadline. Thus, Cosmic's motion was untimely under the local rules.[12]

■ Even so, the Court will consider whether Rule 59(e) is applicable in order to determine whether it has discretion to consider Cosmic's motion. Rule 59(e) applies to motions to alter or amend a "judgment," and its time limit runs from the date of the "entry of the judgment." Rule 58 governs entry of judgment and generally requires that a judgment be "set out in a separate document." FED.R.CIV.P. 58(a). Thus, where a judgment has not been set out in a separate document even though one is required, the time to act under Rule 59(e) is not implicated. *See Jackson*, 375 F.3d at 1293 n. 5 (noting that Rule 59(e)'s time limit began to run on the date the judgment was entered under Rule 58).

In this case, none of the exceptions to the separate-document rule applies, and Insituform's default judgment against Cos-

---

siders July 11 to be the relevant date for determining the motion's timeliness.

**12.** If Rule 6(d)'s three-day extension were applicable, Cosmic's motion would have been timely. In that circumstance, Cosmic would

have had thirty-one days after June 8, 2011 to file its motion. This would have landed on July 9, which was a Saturday. Under Rule 6(a)(1), Cosmic would have had until Monday, July 11 to file the motion, which is in fact the day the motion was filed.

mic has yet to be set out in a separate document. Therefore, no judgment has been "entered" within the meaning of Rule 59(e), and the only time limit implicated by Cosmic's motion for reconsideration is that of Local Rule 7.2E.

■ While Cosmic's motion is untimely under Local Rule 7.2E, the Court has discretion to consider it pursuant to Local Rule 7.1F. Given that Cosmic's delay seems to have been based on its mistaken but innocent belief that it had an additional three days to act pursuant to Rule 6(d), the Court will exercise its discretion to consider the motion.[13]

## B. Grounds for Cosmic's Motion

■ A motion for reconsideration must be based on one of the following three grounds: (1) newly discovered evidence, (2) an intervening change in the law, or (3) the need to correct a clear error or prevent a manifest injustice. *Worsham v. Provident Cos.*, 249 F.Supp.2d 1325, 1338 (N.D.Ga.2002). "Moreover, a motion for reconsideration may not be used to offer new legal theories or evidence that could have been presented in a previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Id.*

■ Cosmic invokes the third ground for its motion for reconsideration, arguing that the royalty used to calculate Insituform's damages must be reduced to correct clear error or prevent manifest injustice. Insituform contends that Cosmic is merely presenting evidence and arguments that could have been presented earlier and that Cosmic's motion should be denied without consideration of the merits.

The Court will allow Cosmic's motion in light of the positions taken by the parties prior to its June 8, 2011 order. Specifically, Insituform relied exclusively on the argument that it had an established royalty of $200 and that there was no need to calculate a hypothetical royalty. Cosmic, on the other hand, argued for a hypothetical royalty of $7.75, which is equal to 5% of its average selling price. Ultimately, the Court rejected each party's position and chose a hypothetical royalty equal to 3.4% of the average lateral-liner installation price. Although the Court's decision was supported by the evidence, its underlying rationale was not advanced by Insituform. Therefore, Cosmic had little incentive to argue that a different installation price should be used as a baseline prior to the Court's order on damages. Moreover, if Cosmic is correct that the royalty should be reduced to $43.69—less than a third of what the Court previously calculated—the consequences of failing to do so would be manifestly unjust. Therefore, the Court will consider the merits of Cosmic's motion.

## C. Merits of Cosmic's Motion

■ Again, Cosmic contends that Insituform's damages should be based on the average price of installing a Top Hat by itself, rather than a complete lateral-liner installation. Insituform has failed to respond to the substance of this argument, but the Court rejects it on the merits because Cosmic ignores crucial aspects of the Court's prior holding.

In its June 8, 2011 order, the Court conducted a comprehensive analysis of the factors used to determine a reasonable royalty under *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). The Court concluded that eleven of the fifteen factors

---

**13.** The Court will do the same for AMerik's motion for reconsideration, which was also filed on July 11, 2011.

weighed in favor of Insituform's proposed royalty of $200, only one factor weighed in favor of Cosmic's proposed royalty of $7.75, and three factors were neutral. The Court's ultimate decision to use a $136 royalty was informed by all fifteen factors and did not result from the mechanical application of an inflexible royalty rate to an inflexible installation price. The Court simply determined that the average lateral-liner installation price of $4,000, when multiplied by a 3.4% royalty rate, reflected an accurate balance of the *Georgia–Pacific* factors.

Moreover, the Court's analysis specifically took into account the fact that complete lateral-liner installations involve more than the accused Top Hat product. Ultimately, the Court concluded that several factors weighed in favor of using the complete installation price as a baseline. For example, in its analysis of the fourth factor, the Court found that Insituform had an established strategy of licensing based on a percentage of the lateral-liner installation price, regardless of the intended use for the license.

Finally, and most importantly, the royalty rate used by the Court was discounted to reflect Cosmic's concern. The evidence showed that typical royalties for similar products in the industry ranged from 3.4% to 6.67% of the installation price, and even Cosmic argued that 5% was an appropriate rate (although it maintained that the rate should be multiplied by its sales price, rather than the installation price). The Court, however, chose to use the rate at the low end of the spectrum to compensate for the fact that the average installation price of $4,000 generally reflected rights exceeding those Cosmic infringed. If the Court had used a lower installation price as a baseline, it undoubtedly would have used a higher royalty rate to reflect the overwhelming weight of the *Georgia–Pacific* factors in favor of Insituform. Although the Court could tinker with the underlying numbers here, it finds no reason to do so, given that the end result would be the same.

In sum, Cosmic's argument does not warrant reconsideration of the $136 royalty used by the Court to calculate Insituform's damages, and Cosmic's motion for reconsideration will be denied.

### III. AMerik's Renewed Motion for Entry of Final Judgment and Motion for Reconsideration

In its renewed motion for entry of final judgment, AMerik argues that it is entitled to an indemnity award equal to its liability to Insituform under the consent judgment, plus attorneys' fees. In its June 8, 2011 order, the Court held that its reasonable royalty, and not the consent judgment, would determine AMerik's indemnity damages. The Court also held that AMerik's indemnity damages would be subsumed within Insituform's infringement damages. In its motion for reconsideration, AMerik challenges the former conclusion and asks for clarification of the latter. Therefore, the Court will reevaluate the amount of damages to be awarded to AMerik and clarify the relationship between those damages and Insituform's damages.

However, the Court will first address several issues that have been raised by Cosmic and relate to the Court's authority to enter a default judgment. Specifically, the Court will address (1) whether it has jurisdiction over the subject matter and the parties, (2) the law that governs AMerik's claims, (3) the sufficiency of AMerik's allegations, (4) whether AMerik's right to indemnity has actualized, and (5) the bases for awarding attorneys' fees. After those threshold matters are resolved, the Court will determine the amount of damages to which AMerik is entitled and discuss how AMerik's damages relate to Insituform's damages.

## A. Jurisdiction

In order to enter a default judgment on AMerik's claims against Cosmic, the Court must have subject-matter jurisdiction over those claims and personal jurisdiction over Cosmic. *See Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1215 n. 13 (11th Cir.2009) (a default judgment is void if the court lacked jurisdiction over the subject matter or the parties). Cosmic does not argue the issue of personal jurisdiction, but in its motion to set aside the consent judgment, it did argue that the Court lacks subject-matter jurisdiction over AMerik's claims.

AMerik originally brought claims against Cosmic in both this action (via its third-party complaint) and in its separate declaratory-judgment action. Although the two cases have since been consolidated, the Court's jurisdiction over each case is an independent matter. *Xaros v. U.S. Fid. & Guar. Co.,* 820 F.2d 1176, 1180 n. 1 (11th Cir.1987) ("Consolidation does not result in a merger of suits or parties such that federal jurisdiction in one case can be engrafted upon a case with which it is consolidated. Each suit must have an independent jurisdictional basis."). Therefore, the Court will separately address its jurisdiction over AMerik's third-party complaint and AMerik's declaratory-judgment complaint.

### 1. Third–Party Complaint

■ AMerik's third-party complaint brings claims for (1) breach of contract; (2) breach of the implied warranty against infringement under O.C.G.A. § 11–2–312(3); and (3) equitable indemnification. It alleges that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Those statutes grant district courts original jurisdiction over claims "arising under" federal law and exclusive jurisdiction over claims "arising under" federal patent law, respectively. AMerik argues that its indemnity claims fall under §§ 1331 and 1338(a) because they arise under federal patent law.[14] Cosmic argues that the Court lacks jurisdiction because AMerik's indemnity claims arise under state law.

■ Section 1338(a) jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).[15] AMerik does not argue that federal patent law creates any of the causes of action in its third-party complaint. Instead, AMerik argues that its indemnity claims depend on the resolution of a substantial question of federal patent law because they require proof of a "rightful claim of infringement." [16]

---

14. Claims that arise under federal patent law for purposes of § 1338(a) necessarily arise under federal law for purposes of § 1331.

15. Similarly, § 1331 jurisdiction "extends over only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded ... claims." *Chris-*

*tianson,* 486 U.S. at 808, 108 S.Ct. 2166 (internal citations and quotations omitted).

16. This language is derived from the implied warranty of infringement created under O.C.G.A. § 11–2–312(3). The statute provides that "[u]nless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like...." AMerik does not explain how this

Whether AMerik's indemnity claims require the resolution of a substantial question of federal patent law is a subtle and difficult question. Indeed, it may lead down "one of the darkest corridors of the law of federal courts and federal jurisdiction." 13D Charles Alan Wright et al., Federal Practice and Procedure § 3582 (3d ed.2008). The Court need not delve into such subtleties, however, because an alternative basis for jurisdiction is available. As discussed below, the Court will exercise supplemental jurisdiction over AMerik's claims pursuant to 28 U.S.C. § 1367.

AMerik also argues that the Court has jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship. Although AMerik has only pled jurisdiction under §§ 1331 and 1338(a), the Court may consider other statutory grants of jurisdiction as long as AMerik has pled facts sufficient to establish such jurisdiction. *Lykins v. Pointer, Inc.*, 725 F.2d 645, 646 (11th Cir. 1984). With respect to citizenship, AMerik's third-party complaint contains the following allegations: (1) AMerik Supplies is a Georgia corporation with its principal place of business in Georgia; (2) Nielson is a citizen of Denmark who is residing in Georgia; and (3) Cosmic is an Austrian entity with its principal place of business in Austria.

The citizenship of each of these parties is determined differently for diversity purposes. First, a domestic corporation is considered a citizen of both the state where it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Thus, AMerik Supplies is a citizen of Georgia for diversity purposes.

 Second, a foreign corporation is considered a citizen of a foreign state, unless its principal place of business is in one of the United States. *See Bel–Bel Int'l Corp. v. Cmty. Bank of Homestead,* 162 F.3d 1101, 1106–07 (11th Cir.1998). Thus, Cosmic is a citizen of a foreign state for diversity purposes.

 Finally, a natural person with foreign citizenship is generally considered a citizen of a foreign state, even if that person is residing in the United States. *Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1298 (5th Cir.1985). The only exceptions to this rule are where the person is also a citizen of the United States, *Las Vistas Villas, S.A. v. Petersen,* 778 F.Supp. 1202, 1204 (M.D.Fla.1991), *aff'd,* 13 F.3d 409 (11th Cir.1994), or where the person has been admitted to the United States for permanent residence, 28 U.S.C. § 1332(a). The third-party complaint does not allege that Nielson has dual citizenship or that he has been admitted to the United States for permanent residence.[17] Thus, although Nielson may be residing in Georgia, he is a citizen of a foreign state for diversity purposes.

 Now that the citizenship of the parties has been determined, the Court must turn to whether such citizenship establishes diversity. "It is a standard rule that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides." *Iraola & CIA, S.A. v. Kimberly–Clark Corp.,* 232 F.3d 854, 860 (11th Cir.2000). In this case, both Nielson and Cosmic are citizens of a foreign state, and they are on opposing sides of the

---

standard is applicable to its other indemnity claims.

**17.** In its opposition to Cosmic's motion to set aside the consent judgment [471], Insituform

argued that Nielson is a permanent resident of the United States, but this assertion is not supported by the pleadings or the record evidence.

third-party action. AMerik Supplies is the only party that is a citizen of one of the United States. Therefore, the Court lacks diversity jurisdiction over the third-party complaint.

■■■ This does not end the inquiry, however, as the Court has determined that it can exercise supplemental jurisdiction over AMerik's third-party claims under 28 U.S.C. § 1367. That statute provides that where a district court has original jurisdiction in an action, it has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Separate claims form part of the same case or controversy under Article III of the U.S. Constitution if they arise out of a common nucleus of operative fact. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir.2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

■■■ In this case, the Court has original jurisdiction over Insituform's patent-infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Thus, the Court will have supplemental jurisdiction over AMerik's third-party claims if they arise out of a common nucleus of operative fact. The Court finds that AMerik's claims fit that description. Indeed, "impleader claims routinely satisfy § 1367(a) because they concern the ultimate liability for the very transaction that is the basis of the underlying suit." 13D WRIGHT ET AL., *supra*, § 3567.1. Here, AMerik is seeking indemnity and attorneys' fees in order to shift ultimate liability to Cosmic for the transactions underlying Insituform's patent-infringement claims. Thus, Insituform's claims and AMerik's claims arise out of a common nucleus of operative fact. In addition, the Court finds no basis for declin-

ing to exercise its jurisdiction under 28 U.S.C. § 1367(c). Thus, the Court will proceed by considering AMerik's third-party claims under its supplemental jurisdiction.

### 2. Declaratory–Judgment Complaint

In its declaratory-judgment complaint, AMerik brings one claim against Insituform and four claims against Cosmic. The claim against Insituform seeks a declaratory judgment that Insituform's patents are invalid or unenforceable or were not infringed. The claims against Cosmic consist of the three indemnity claims asserted in the third-party complaint, plus a claim under Georgia's vouchment statute. With respect to subject-matter jurisdiction, the declaratory-judgment complaint invokes 28 U.S.C. §§ 1331, 1332 and 1338(a).

■■■ The Court has jurisdiction over AMerik's claim against Insituform pursuant to § 1338(a) because that claim seeks a declaratory judgment regarding the validity and infringement of patents and therefore arises under federal patent law. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1366–67 (Fed.Cir.2002). However, as with the third-party complaint, it is unclear whether AMerik's claims against Cosmic arise under federal patent law. Therefore, the Court will consider whether it has diversity or supplemental jurisdiction over those claims.

■■■ The Court has diversity jurisdiction if the amount in controversy exceeds $75,000, and the suit is one between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). Thus, even where there are citizens of foreign states on both sides of the action, "the presence of diverse U.S. citizens on both sides preserves diversity." 15–102 MARTIN H. REDISH, MOORE'S FEDERAL PRACTICE–CIVIL § 102.77 (2012), *avail-*

able at Lexis MOORES; *cf. Iraola*, 232 F.3d at 860 ("[F]ederal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, *without the presence of citizens of a state on both sides*." (Emphasis added.)).

AMerik's declaratory-judgment complaint involves the same parties as its third-party complaint, with the addition of the two Insituform entities as defendants. With respect to those two entities, the complaint alleges that (1) Insituform Technologies, Inc. is a Delaware corporation with its principal place of business in Missouri; and (2) Insituform (Netherlands), B.V., Inc. is "a dual-citizenship corporation registered in the Netherlands and Delaware with a principal place of business [in the Netherlands]." Thus, while there are foreign citizens on both sides of the declaratory-judgment action, there are also U.S. citizens on both sides. Moreover, the only U.S. plaintiff (AMerik Supplies) is a Georgia citizen, and the only U.S. defendants (the Insituform entities) are citizens of Delaware and Missouri. Consequently, the diversity-of-citizenship requirement is satisfied.

 With respect to the amount in controversy, Cosmic has argued that AMerik's declaratory-judgment complaint is fatally deficient because it fails to plead a specific amount of damages. However, such pleading specificity is not required to invoke federal jurisdiction. Instead, "where jurisdiction is based on a claim for indeterminate damages, ... the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805,

807 (11th Cir.2003). Here, AMerik does not contend that the amount in controversy is *actually* $75,000 or less, and the record evidence shows that the amount in controversy far exceeds $75,000. Therefore, this requirement is also satisfied.

In sum, the Court has jurisdiction over AMerik's claims against Cosmic in the declaratory-judgment complaint because there are diverse U.S. citizens on both sides of the action and the amount in controversy exceeds $75,000. Consequently, the Court will proceed by considering those claims under its diversity jurisdiction.[18]

**B. Governing Law**

In a footnote in its brief in opposition to AMerik's renewed motion for entry of final judgment, Cosmic purports to maintain "its position that it owes no duty of indemnification or consequential damages to AMerik or Nielson, since all sales were made *ex works* Austria, and since Georgia commercial law should not apply to those sales." In doing so, Cosmic incorporates by reference its motion to set aside the consent judgment, which argued as follows:

> [AMerik's] claims for indemnification were pled and adjudicated under Georgia law. Because Cosmic is a citizen of a foreign nation, however, Georgia law may or may not apply, in whole or in part. Among other potential sources of law governing the pertinent international transactions between Cosmic and AMerik is the *UN Convention on Contracts for the International Sale of Goods* (the "Convention"), to which both the United States and Austria are state parties.

In response, AMerik argued that Cosmic is precluded from asserting any affirmative

---

**18.** In any event, if diversity jurisdiction were lacking, the Court would exercise supplemental jurisdiction over AMerik's claims against Cosmic because they arise out of a common nucleus of operative fact with AMerik's claim against Insituform.

defenses, including choice-of-law defenses, as a result of its default on AMerik's claims. The Court agrees.

■ Federal Rule Civil Procedure 8(c) requires all affirmative defenses to be presented in a responsive pleading. Consequently, "[f]ailure to plead an affirmative defense generally results in a waiver of that defense." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir.2010). It follows that a defendant that fails to file a responsive pleading and is subjected to default generally waives its affirmative defenses.

■ Cosmic's suggestion that international law may govern this case is analogous to a federal preemption argument. Generally, preemption is considered an affirmative defense to state claims because it asserts that those claims have been substantively displaced by federal law. *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir.2003). Likewise, Cosmic's argument that international law may apply is essentially an assertion that AMerik's state claims are displaced by international law. Thus, Cosmic's argument is an affirmative defense that was required to be pled under Rule 8(c) but was waived by Cosmic's default.

■ Moreover, even if Cosmic were not required to plead the applicability of international law, choice-of-law arguments are waived if not properly presented to the district court. *Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1128 (11th Cir.2009). Here, Cosmic went no further than to say that "Georgia law may or may not apply, in whole or in part." Although Cosmic identified one other *potential* source of law, it failed to present the Court with any choice-of-law analysis whatsoever. Thus, it has not properly raised this issue, and the Court considers Cosmic's choice-of-law argument waived. The Court will apply Georgia law to AMerik's claims.

**C. Sufficiency of AMerik's Allegations**

■ Next, the Court will evaluate the sufficiency of AMerik's allegations because "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n. 41 (11th Cir.1997) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). "[W]hile a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir.2005) (quoting *Nishimatsu*, 515 F.2d at 1206). Thus,

> before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.

*Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed.Appx. 860, 863 (11th Cir.2007). Although the Court's previous order on damages indicated that the Court would enter a default judgment in favor of AMerik, it did not address which of AMerik's claims support a default judgment. Thus, for purposes of clarification, the Court will now address each of AMerik's claims.

**1. Breach of Contract**

■ In Count I of the third-party complaint and Count II of the declaratory-judgment complaint, AMerik brings claims for breach of contract. In its briefs, AMerik characterizes these claims as "express indemnification" claims. The two claims are identical in all material respects and will be treated as a single claim for purposes of this analysis. Both allege that

"[a] contract existed between Cosmic and AMerik concerning the purchase of the 'Top Hat' product," and "[p]ursuant to the terms of the contract, Cosmic expressly represented that the Top Hat products did not infringe any valid U.S. patents."

 Contrary to AMerik's characterization of this claim, its allegations do not establish an express indemnity agreement. However, when taken as true, they do establish an express *warranty* against infringement. *See* O.C.G.A. § 11–2–313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). Moreover, "an action for breach of warranty against the seller for damages suffered at the hands of some third party [is] in effect an action for implied indemnity." *Alterman Foods, Inc. v. G.C.C. Beverages, Inc.,* 168 Ga.App. 921, 922, 310 S.E.2d 755, 756 (1983) (citing *Wilson v. Dodge Trucks, Inc.,* 238 Ga. 636, 637, 235 S.E.2d 142, 144 (1977)). Therefore, AMerik's "express indemnification" claim is more accurately characterized as an implied indemnity claim based on an express warranty against infringement.

Although AMerik's allegations are sufficient to establish an implied contract of indemnity, its right to indemnification does not actualize until it is legally obligated to pay Insituform through a judgment or settlement. *Emergency Prof'ls of Atlanta, P.C. v. Watson,* 288 Ga.App. 473, 475, 654 S.E.2d 434, 436–37 (2007). This prerequisite to recovery is not a pleading requirement, however, because a third-party indemnity action is properly maintained while the underlying suit is pending. *See State Line Metals, Inc. v. Aluminum Co. of Am.,* 216 Ga.App. 14, 16, 453 S.E.2d 474, 476 (1994). Therefore, the Court will not take up the issue of AMerik's right to recover until later in this order. For now, the Court simply holds that AMerik has adequately pled the existence of an express warranty against infringement, which gives rise to an implied contract of indemnity.

## 2. Implied Warranty Against Infringement

 In Count II of the third-party complaint and Count III of the declaratory-judgment complaint, AMerik brings claims based on the implied warranty against infringement created by the Georgia Commercial Code. These two claims are identical in all material respects and will be treated as a single claim for purposes of this analysis. Both rely on O.C.G.A. § 11–2–312(3), which provides that "[u]nless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like...."

AMerik alleges that Cosmic is a "merchant who regularly deals in goods including but not limited to, the 'Top Hat' system." The Court finds that this allegation, taken as true, is sufficient to establish the applicability of § 11–2–312(3). Therefore, Cosmic's sales of the Top Hat product to AMerik included an implied warranty that the Top Hat product was free from any rightful claims of infringement. Moreover, an implied warranty creates an implied contract of indemnity in the same manner as discussed above with respect to express warranties. *See Alterman Foods,* 168 Ga.App. at 922, 310 S.E.2d at 756. Therefore, AMerik has sufficiently alleged that it has an implied contractual right to be indemnified by Cosmic against any rightful claims of infringement relating to the Top Hat product. But again, AMerik's right to indemnification does not actualize until it is legally obligated to pay Insituform through

a judgment or settlement, and that issue will be taken up later in this order.

### 3. Equitable Indemnification

In Count III of the third-party complaint and Count IV of the declaratory-judgment complaint, AMerik brings claims for "equitable indemnification." These two claims are identical in all material respects and will be treated as a single claim for purposes of this analysis. AMerik alleges that Cosmic "is contractually bound and/or has a common law duty" to indemnify AMerik against Insituform's claims of infringement. The contractual component of this allegation seems to be nothing more than a reiteration of AMerik's express warranty claim,[19] and the Court will not revisit that claim here. However, the Court will consider whether Cosmic has a common law duty to indemnify AMerik against Insituform's claims.

 The doctrine of equitable or common law indemnity in Georgia has been summarized as follows:

> The duty to indemnify may arise by operation of law, independently of contract. If a person is compelled to pay damages because of negligence *imputed to him* as the result of a tort committed by another, he may maintain an action for indemnity against the person whose wrong has thus been imputed to him.

*City of Atlanta v. Benator,* 310 Ga.App. 597, 608–09, 714 S.E.2d 109, 118 (2011) (quoting *Nguyen v. Lumbermens Mut. Cas. Co.,* 261 Ga.App. 553, 556, 583 S.E.2d 220, 224 (2003)). However, where there are no allegations of imputed negligence or vicarious liability, "common law indemnity principles do not apply." *Id.* at 609, 714 S.E.2d at 118 (quoting *Nguyen,* 261 Ga. App. at 556, 583 S.E.2d at 224). For

example, joint tortfeasors cannot bring claims for common law indemnification against one another because their liability arises from their own tortious conduct. *See id.*

 In this case, Insituform has never sought to hold AMerik liable for *Cosmic's* acts of infringement on a theory of vicarious or imputed liability. Instead, Cosmic and AMerik are liable as joint tortfeasors based on their own acts of infringement. *See Shockley v. Arcan, Inc.,* 248 F.3d 1349, 1364 (Fed.Cir.2001) ("[P]arties that make and sell an infringing device are joint tortfeasors with parties that purchase an infringing device for use or resale."). Therefore, common law indemnity principles do not apply, and AMerik's equitable indemnification claim fails to state a claim upon which relief can be granted. Consequently, the Court will not enter a default judgment on that claim.

### 4. Vouchment

In Count V of the declaratory-judgment complaint, AMerik brings a claim against Cosmic under Georgia's vouchment statute, O.C.G.A. § 9–10–13. In its June 8, 2011 order, the Court noted that § 9–10–13 and common-law vouchment principles typically apply only to nonparties. The Court further noted that "[t]he parties have not cited, nor has the Court found, any case where vouchment was upheld against a party-indemnitor in the same action where the indemnitee was defending against a primary claimant." For that reason, Count V of the declaratory-judgment complaint fails to state a claim upon which relief can be granted, and the Court will not enter a default judgment on that claim.

---

**19.** Indeed, the claim goes on to allege that AMerik "purchased the 'Top Hat' system from [Cosmic] after [Cosmic] made the representation that the goods would [be] delivered free of the rightful claim of any third person by way of infringement." It does not allege any facts that would establish an express contract of indemnity.

## D. AMerik's Right to Indemnification

As discussed above, AMerik has an implied contractual right to be indemnified by Cosmic for claims of infringement relating to the Top Hat product. However, that right does not actualize until AMerik is legally obligated to pay a judgment or settlement. *Watson,* 288 Ga.App. at 475, 654 S.E.2d at 436–37. Thus, AMerik cannot recover from Cosmic if its settlement with Insituform was "made voluntarily and not under the compulsion of law." *Id.* For example, AMerik will not be entitled to indemnification if it had a defense available that would have defeated Insituform's claims. *See id.,* 654 S.E.2d at 437.

 AMerik contends that the consent judgment establishes its legal obligation to pay Insituform. However, "the 'voluntariness' issue does not turn on whether payment was made pursuant to a settlement versus a default or other type of judgment. Instead, a defendant's payment to an injured party is considered 'voluntary' if it was made in the absence of allegations showing a legal necessity for payment." *Id.* at 476, 654 S.E.2d at 437. Thus, the Court must look beyond the consent judgment to determine whether Insituform's allegations against AMerik showed a legal necessity for payment.

 This does not necessarily mean that AMerik must prove that it was actually liable to Insituform for patent infringement. "[A]n indemnitee, after giving the indemnitor notice and an opportunity to defend, [can] settle a lawsuit and claim indemnity upon a showing that the decision to settle was reasonable." *S. Ry. Co. v. Ga. Kraft Co.,* 823 F.2d 478, 480 (11th Cir.1987). A decision to settle is considered reasonable if the indemnitee "was potentially liable and settled the lawsuit in good faith." *See id.* Thus, as long as AMerik gave Cosmic the requisite "notice and an opportunity to defend," it need only establish that it was *potentially* liable to Insituform and that it settled in good faith.

For the reasons discussed below, the Court finds that AMerik failed to provide Cosmic with the requisite "notice and an opportunity to defend" and that it must therefore establish its *actual* liability to Insituform before it can recover from Cosmic. But as the Court will also explain below, the issue of AMerik's actual liability to Insituform for patent infringement does not need to be litigated, because the doctrine of collateral estoppel prevents Cosmic from arguing against that liability. However, the same rationale does not apply to AMerik's payment of Insituform's attorneys' fees. AMerik has not established its actual liability for those fees; therefore, they will not be included in AMerik's indemnity award.

### 1. The Actual–Liability Requirement

In its June 8, 2011 order, the Court held that the consent judgment would not be used to determine Cosmic's liability to AMerik, in part because doing so would offend principles of due process.[20] Specifically, the Court held that AMerik failed to show that "it gave Cosmic notice of its intention to settle and that it offered Cosmic 'the opportunity either to settle or take over the defense of the case' and Cosmic declined." Order at 63, ECF No. 798 (quoting *Southern Railway,* 823 F.2d at 480). Thus, the Court indicated that the "notice and an opportunity to defend" required by *Southern Railway* includes notice of the indemnitee's intent to settle

---

20. The Court also held that AMerik was barred from asserting the consent judgment against Cosmic based on the doctrine of judicial estoppel. Although this was an independent and sufficient ground for the Court's ruling, AMerik does not contest that holding in its motion for reconsideration.

and an opportunity to participate in settlement negotiations.

In its motion for reconsideration, AMerik does not contend that it gave Cosmic notice of its intent to settle with Insituform or an opportunity to participate in the settlement negotiations. Instead, AMerik argues that the Court has misstated the law. Specifically, it contends that *Southern Railway* and the cases cited therein do not require notice of a settlement; they merely require notice of the lawsuit and that any settlement be made reasonably and in good faith. In support of this position, AMerik places particular emphasis on sweeping language from *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills, Inc.*, 211 F.2d 785 (10th Cir.1954), a case cited by the Eleventh Circuit in *Southern Railway*. For the reasons discussed below, the Court stands by its prior opinion.

First, AMerik's reading of *Southern Railway* itself is incorrect. Incredibly, AMerik contends that there was "no mention of any prior notice of the settlement" in that case. But as the language quoted in the Court's previous order demonstrates, the court in *Southern Railway* specifically found that the indemnitor was given both notice of the indemnitee's intent to settle and an opportunity to either settle or take over the defense of the case. Thus, the Eleventh Circuit has interpreted *Southern Railway* as *requiring* the indemnitee to notify the indemnitor that settlement negotiations have begun and to accept the indemnitor's input in the settlement process. *Seguros del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164, 1179 (11th Cir.2001).

Second, AMerik's reliance on *Dobry* is misguided. Like the court in *Southern Railway*, the *Dobry* court found that the indemnitor had been advised of the indemnitee's intent to settle. It was only against that factual backdrop that the court made the sweeping statement that

in Oklahoma and elsewhere in indemnity cases, where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage.

211 F.2d at 788. Moreover, the *Dobry* opinion reflects the Tenth Circuit's interpretation of Oklahoma indemnity law, and the Oklahoma Court of Civil Appeals recently clarified that law as follows:

Essentially, the indemnitee—the party settling a claim who then seeks indemnity—is required to show proof of its *actual liability* unless it notifies the putative indemnitor of a potential settlement of the underlying litigation, thereby providing the indemnitor with an opportunity to approve the settlement, participate in settlement negotiations, or assume the defense of the underlying claim. If the indemnitee does provide sufficient notice and opportunity to object, the indemnitee need only show *potential liability*.

*Caterpillar Inc. v. Trinity Indus., Inc.*, 134 P.3d 881, 888 (Okla.Civ.App.2005). This authoritative statement of Oklahoma law is in direct conflict with AMerik's position. Thus, even under the Oklahoma law at issue in *Dobry*, AMerik would not be entitled to indemnity based on the consent judgment.

Ultimately, Georgia courts have not provided a definitive answer on this issue. Thus, federal courts applying Georgia law must "make an educated guess as to how [the] state's supreme court would rule." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir.1982) (quoting *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir.1973)). This Court is not left without guidance, however, as it is bound by the

Eleventh Circuit's interpretation of Georgia law. *See LeFrere v. Quezada,* 582 F.3d 1260, 1265 (11th Cir.2009) (prior-panel-precedent rule applies to decisions that address state-law issues); *GAB Bus. Servs., Inc. v. Syndicate 627,* 809 F.2d 755, 761 n. 8 (11th Cir.1987) ("In the absence of a definitive pronouncement from the Florida high court, we are obliged to follow our own most recent interpretation of Florida law....").

 The Eleventh Circuit's only interpretations of Georgia law on this issue came in *Southern Railway* and *Seguros.* Under *Southern Railway,* an indemnitee ordinarily must prove *actual liability* in order to recover from an indemnitor based on a settlement agreement. 823 F.2d at 480. It is only where the indemnitor has been given "notice and an opportunity to defend" that the indemnitee can recover based on a showing of *potential liability. Id.* In *Seguros,* the Eleventh Circuit clarified that "notice and an opportunity to defend" includes the obligation to notify the indemnitor that settlement negotiations have begun and to accept the indemnitor's input in the settlement process.[21] 262 F.3d 1164.

In this case, AMerik concedes that it did not notify Cosmic that settlement negotiations had begun or accept Cosmic's input in the settlement process. Thus, it must prove its actual liability to Insituform before it may recover on its indemnity claims against Cosmic. As discussed below, however, that requirement has already been met because the doctrine of collateral estoppel prevents Cosmic from arguing against AMerik's actual liability.

## 2. Collateral Estoppel and AMerik's Actual Liability to Insituform for Patent Infringement

Insituform's claims against both Cosmic and AMerik are based on the allegation that Cosmic's Top Hat product infringes Insituform's valid and enforceable patents. In its June 8, 2011 order, the Court determined that it would enter a default judgment on Insituform's claims against Cosmic. The Court will now determine whether that decision has res judicata effect such that Cosmic is barred from arguing that the Top Hat product does not infringe Insituform's patents. If so, AMerik's actual liability to Insituform is already established,[22] and AMerik is entitled to be indemnified by Cosmic without having to prove that liability.

 "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Cmty. State Bank v. Strong,* 651 F.3d 1241, 1263 (11th Cir.2011). Issue preclusion or collateral estoppel forecloses the relitigation of issues that have been previously litigated and decided. *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.,* 327 F.3d 1309, 1316 (11th Cir.2003). When the prior decision was made by a federal court, federal preclusion principles apply. *Id.* And when the prior decision was made by the same court, the court may apply preclusion principles sua sponte. *See Shurick v. Boeing*

---

**21.** This is also consistent with the Eleventh Circuit's interpretation of Florida law. *See GAB Bus. Servs.,* 809 F.2d at 760 ("We have not required proof of actual liability where an indemnitee informs the indemnitor of a proposed settlement and the indemnitor fails to object.... In contrast when the indemnitee has not given the indemnitor an opportunity to review, pass upon, or participate in the settlement, due process and 'equitable indemnity principles' compel a demonstration of actual as opposed to potential liability.").

**22.** It is undisputed that AMerik sold Cosmic Top Hats in the United States. As a result, AMerik is liable to Insituform for patent infringement so long as Cosmic's Top Hat is covered by Insituform's patents. *See* 35 U.S.C. § 271(a).

*Co.*, 623 F.3d 1114, 1116 n. 2 (11th Cir. 2010).

In this case, the relevant prior decision was made by this Court; thus, the Court may raise the issue of collateral estoppel *sua sponte*, and federal preclusion principles will apply. Before turning to the elements of collateral estoppel, however, two threshold questions need to be addressed. The first is whether the Court's decision to enter a default judgment on Insituform's claims against Cosmic was sufficiently final to be given collateral-estoppel effect. The second is whether the decision may be given collateral-estoppel effect in the context of AMerik's indemnity claims, even though AMerik is not a party to Insituform's default judgment.

 While traditional res judicata requires a final judgment, "the finality requirement for collateral estoppel is 'less stringent.'" *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1253 (11th Cir. 2006). A prior decision may be given collateral-estoppel effect so long as it bears "sufficient indicia of finality." *Id.* As discussed above in the context of Cosmic's motion for reconsideration, the Court has not actually entered a final judgment on Insituform's claims against Cosmic. However, the Court's June 8, 2011 order was unequivocally final with respect to the Court's decision to enter such a judgment. All that is left to be determined is the amount of the judgment. Therefore, the order has sufficient indicia of finality to be given collateral-estoppel effect.

 With respect to the second threshold question, due process prohibits using collateral estoppel against a litigant who was not a party to the prior decision. *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). However, the party benefiting from the prior decision need not have been a party to it. *See Strong*, 651 F.3d at 1264 n. 20 (contrasting federal

law and Georgia law). Indeed, "a litigant who was not a party to a federal case [may] use collateral estoppel 'offensively' in a new federal suit against the party who lost on the decided issue in the first case." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, the Court may apply collateral estoppel to benefit AMerik even though AMerik is not a party to Insituform's default judgment.

 The Court now turns to the elements of collateral estoppel. Under federal law, the following requirements must be met before the doctrine becomes available:

(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp.*, 327 F.3d at 1316 (quoting *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir.1986)). Even if the doctrine is available, however, the decision to apply it involves equitable considerations and lies within the discretion of the district court. *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989).

The issue currently at stake with respect to AMerik's indemnity claims is whether Cosmic's Top Hat product infringes Insituform's patents. The same issue was raised by Insituform's claims against Cosmic, and its resolution is a critical and necessary part of the judgment on those claims. Thus, collateral estoppel will be available as long as Cosmic had a full and fair opportunity to litigate the issue

against Insituform, and the issue was actually litigated. For the following reasons, those requirements are also satisfied.

■ First, Cosmic had a full and fair opportunity to litigate the relevant issue against Insituform. Cosmic actively defended against Insituform's claims for two years before the Court entered default as a sanction for its discovery misconduct. Its defense included filing contentions of patent invalidity, filing claim-construction briefs, and participating in a claim-construction hearing. Thus, Cosmic had ample opportunity to contend that its Top Hat product did not infringe Insituform's patents.

■ Turning to the final requirement, a default judgment ordinarily will not support the application of collateral estoppel because the issues are not actually litigated. *In re Bush,* 62 F.3d 1319, 1323 (11th Cir.1995). However, this general rule assumes that a defaulting defendant has not substantially participated in the lawsuit. *See id.* at 1324. Where the converse is true, and the defendant is defaulted as a sanction for dilatory or obstructive conduct, the party's "abuse of the judicial process must not be rewarded by a blind application of the general rule denying collateral estoppel effect to a default judgment." *Id.* In these circumstances, the "actually litigated" requirement is met, and it is within the district court's discretion to apply collateral estoppel. *See id.* at 1324–25.

The facts of this case fit squarely within the exception recognized in *Bush.* As discussed above, Cosmic substantially participated in the lawsuit for two years before the Court entered default as a sanction for Cosmic's defiant and obstructive conduct. Thus, the "actually litigated" requirement is met, and Cosmic's "abuse of the judicial process" will not be rewarded by giving it an underserved "second bite at the apple." *Id.* at 1324.

■ The Court also finds that equitable considerations warrant the application of collateral estoppel against Cosmic. The Court did not enter a default judgment when Insituform first asked for that result. Instead, the Court gave Cosmic an opportunity to remedy its discovery abuses through the payment of monetary sanctions. Cosmic was on notice that a default was possible if it failed to comply with those sanctions, and it should have known that if a default was entered it might be precluded from relitigating the issues raised by Insituform's claims. Consequently, it is not unfair to apply collateral estoppel against Cosmic.

In sum, the Court's decision to enter a default judgment in favor of Insituform and against Cosmic precludes Cosmic from arguing that its Top Hat product does not infringe Insituform's valid and enforceable patents. Given that Insituform's claims against AMerik are based on the same allegation, Cosmic is also precluded from arguing that AMerik is not liable to Insituform for patent infringement. Consequently, AMerik's actual liability to Insituform is established, and AMerik is entitled to a recover on its indemnity claims against Cosmic based on that liability.

### 3. AMerik's Liability for Insituform's Attorneys' Fees

As discussed above, AMerik is not entitled to indemnification based on the consent judgment. Therefore, the Court will not award AMerik the attorneys' fees it is obligated to pay Insituform under that judgment.

In addition, the Court's June 8, 2011 order held that this is not an "exceptional" case under 35 U.S.C. § 285 and thus declined to award Insituform the attorneys' fees it incurred prosecuting its claims against Cosmic. This conclusion applies with even greater force to Insituform's claims against AMerik because AMerik

was not sanctioned for discovery misconduct in defending against Insituform's claims. Therefore, AMerik has not shown that it is actually liable to Insituform for attorneys' fees, and its indemnity award will not include such fees.

### E. AMerik's Right to Recover Its Own Attorneys' Fees

■ "Generally, attorney fees are not recoverable as damages absent an express provision in a contract or a statutory mandate." *Alterman Foods,* 168 Ga.App. at 923, 310 S.E.2d at 757. AMerik argues that it is entitled to recover its reasonable attorneys' fees from Cosmic (1) based on an express contract of indemnity; (2) under O.C.G.A. § 13–6–11, based on Cosmic's bad faith and stubborn litigiousness; and (3) under as O.C.G.A. § 11–2–715, as consequential damages resulting from Cosmic's breach of its express and implied warranties against infringement. As discussed above, AMerik has failed to adequately plead the existence of an express contract of indemnity. Therefore, the Court will only consider the latter two bases for awarding AMerik its attorneys' fees.

### 1. O.C.G.A. § 13–6–11

AMerik contends that it is entitled to recover attorneys' fees "for bad faith and stubborn litigiousness under O.C.G.A. § 9–11–13." While O.C.G.A. § 9–11–13 has nothing to do with attorneys' fees, AMerik presumably meant to refer to O.C.G.A. § 13–6–11, which provides as follows:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

AMerik argues that "Cosmic's willful refusal to defend [against Insituform's patent-infringement claims] and the subsequent default are clearly evidence of bad faith and stubborn litigiousness." In response, Cosmic argues that AMerik cannot recover attorneys' fees under § 13–6–11 because it failed to specifically request such fees in its complaints.

At first glance, O.C.G.A. § 13–6–11 may appear to require only a general prayer for attorneys' fees, followed by a finding that the defendant acted in bad faith, was stubbornly litigious or caused the plaintiff unnecessary trouble and expense. Such an interpretation would seem particularly appropriate if the statute was intended to punish litigation misconduct. But the statute has a different·purpose, as it has "consistently been found to relate to the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." *David G. Brown, P.E., Inc. v. Kent,* 274 Ga. 849, 850, 561 S.E.2d 89, 90 (2002).

■ As a result, the Georgia Court of Appeals has held that "[a] general request for attorney fees, without reference to O.C.G.A. § 13–6–11 or the criteria set forth therein, is not the specific pleading contemplated by the statute. The statute requires that the party specifically plead and pray for fees thereunder." *Dep't of Transp. v. Ga. Television Co.,* 244 Ga.App. 750, 752, 536 S.E.2d 773, 776 (2000). Thus, the operation of the statute may be summarized as follows:

> OCGA § 13–6–11 authorizes an award of attorney fees where a plaintiff specifically prays for attorney fees and refers either to the Code section or to the criteria set forth therein, by alleging the defendant acted in bad faith in the underlying transaction, was stubbornly liti-

gious, or caused the plaintiff unnecessary trouble and expense.

*Joyner v. Raymond James Fin. Servs., Inc.,* 268 Ga.App. 835, 839, 602 S.E.2d 871, 875 (2004).

In this case, both of AMerik's complaints contain a general prayer for attorneys' fees, but neither refers to § 13–6–11 or alleges that Cosmic acted in bad faith, was stubbornly litigious, or caused AMerik unnecessary trouble and expense. Therefore, AMerik has failed to satisfy the pleading requirements of O.C.G.A. § 13–6–11, and the Court will not award AMerik attorneys' fees under that statute.

### 2. O.C.G.A. § 11–2–715

AMerik also contends that it is entitled to recover attorneys' fees as consequential damages resulting from Cosmic's breach of its express and implied warranties against infringement. O.C.G.A. § 11–2–715(2) provides that the consequential damages resulting from a seller's breach include "[i]injury to person or property proximately resulting from any breach of warranty." The Georgia Court of Appeals has held that this includes attorneys' fees incurred defending against an action brought by an injured third party. *See Alterman Foods,* 168 Ga.App. at 923–24, 310 S.E.2d at 757–58. Thus, the parties agree that AMerik may recover the attorneys' fees it incurred defending against both Insituform's infringement claims and Southwest Pipeline's indemnity claims.

However, the parties disagree concerning AMerik's ability to recover the attorneys' fees it has incurred prosecuting its indemnity claims against Cosmic. There is no authority for using § 11–2–715(2) to award such fees. *See In re Fried Group, Inc.,* 218 B.R. 247, 252–53 (M.D.Ga.1998). But even so, AMerik argues that special circumstances warrant such a result here. The argument proceeds as follows. First, Cosmic's breach led to Insituform's claims against AMerik, which resulted in a settlement, which resulted in the consent judgment. Under the consent judgment, AMerik is required to prosecute its indemnity claims against Cosmic, which has led it to incur attorneys' fees. Thus, such fees are consequential damages of Cosmic's breach.

Putting aside the attenuated relationship between the fees AMerik seeks and Cosmic's breach, the Court has already held that AMerik cannot use the consent judgment against Cosmic. Therefore, the Court will not award AMerik the fees it has incurred prosecuting its indemnity claims against Cosmic. Instead, AMerik's fee award will be limited to the fees it incurred defending against Insituform's and Southwest Pipeline's claims.

### F. AMerik's Right to a Separate Judgment

In its June 8, 2011 order, the Court stated that AMerik's indemnity award would be "subsumed within the $3,962,576 awarded to [Insituform] for infringement damages." In its motion for reconsideration, AMerik asks for clarification of this statement, fearing that the Court does not intend to enter a separate judgment in its favor.

In response, Cosmic argues that a separate judgment is inappropriate because it would allow Insituform to recover twice for the same infringing Top Hats. Cosmic notes that AMerik has agreed to assign any judgment it obtains against Cosmic to Insituform, and Cosmic fears that having to pay both Insituform's and AMerik's judgments to Insituform will subject it to duplicative liability. Thus, Cosmic argues that there should be no separate judgment, or in the alternative, that Insituform's judgment should be reduced by the amount of AMerik's judgment.

Cosmic's fear of duplicative liability is unwarranted, and the Court never meant to suggest that a separate judgment would

not be entered in favor of AMerik. The Court was merely commenting on the idea that Insituform will be entitled to only one full recovery of its infringement damages. The Court will now elaborate on that concept.

 "[P]arties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale." *Shockley*, 248 F.3d at 1364. "Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee." *Id.* In this case, Cosmic manufactured infringing Top Hats, which AMerik purchased and resold. Thus, Cosmic and AMerik are joint tortfeasors with respect to those Top Hats, and each is liable for the full amount of damages suffered by Insituform, up to a full, single recovery.

While the AMerik/Insituform settlement agreement does complicate matters, a proper understanding of the effects of that agreement should alleviate Cosmic's fear of duplicative liability. AMerik has chosen to satisfy its liability to Insituform by assigning to Insituform its judgment against Cosmic. Thus, any payment Cosmic makes on AMerik's judgment will go to Insituform in satisfaction of AMerik and Cosmic's joint liability for patent infringement. Consequently, any such payment will reduce the amount Insituform may collect on its own judgment against Cosmic.

However, the Court notes that this logic applies only to AMerik's indemnity award. It does not apply to the amount AMerik will be awarded as consequential damages for Cosmic's breach of warranty, nor does it apply to the costs AMerik is entitled to recover as the prevailing party on its indemnity claims. Any recovery of those amounts will not reduce the amount Insituform may collect on its own judgment against Cosmic.

**G. Amount of AMerik's Judgment**

The Court will enter a default judgment in favor of AMerik and against Cosmic consisting of three components: (1) an indemnity award, (2) consequential damages, and (3) costs. In addition, AMerik will be entitled to post-judgment interest on the entire amount of the judgment pursuant to 28 U.S.C. § 1961.

The Court has all the information it needs to calculate AMerik's indemnity award and will do so below. However, as the Court will further explain below, it does not have enough information to calculate AMerik's consequential damages or costs. Thus, the parties will be instructed to make further submissions so that the Court can make the necessary calculations and enter a final judgment.

**1. AMerik's Indemnity Award**

As discussed above, AMerik is entitled to an indemnity award equal to its actual liability to Insituform for patent infringement. That amount will be determined using the reasonable royalty the Court previously calculated, i.e., $136 per infringing Top Hat. It is undisputed that AMerik purchased 15,399 Top Hats from Cosmic and resold each of those Top Hats in the United States. Thus, AMerik's actual liability to Insituform is $2,094,264, and AMerik's final judgment against Cosmic will include an indemnity award in that amount.

**2. AMerik's Consequential Damages**

As discussed above, AMerik is entitled to recover consequential damages resulting from Cosmic's breach of express and implied warranties against infringement, including the costs and attorneys' fees it incurred defending against Insituform's patent-infringement claims and Southwest Pipeline's indemnity claims. Prior to the Court's June 8, 2011 order, one of AMerik's attorneys submitted two declarations

detailing the fees and costs AMerik has incurred in this litigation. Given that these numbers likely need to be updated, the Court will direct AMerik to submit additional evidence of its costs and attorneys' fees as set forth below. After AMerik complies with the Court's directive, Cosmic will be given an opportunity to object to the reasonableness of AMerik's fees and costs. The Court will then determine the amount to which AMerik is entitled and include that amount in a final judgment.

In light of AMerik's previous submissions, the Court should also clarify the particular fees and costs that will be awarded. Thus far, AMerik has separated its fees and costs into four categories, based on whether they were incurred (1) defending against Insituform's patent-infringement claims; (2) defending against Southwest Pipeline's indemnity claims; (3) participating in global settlement negotiations; or (4) prosecuting its indemnity claims against Cosmic. AMerik is entitled to recover fees and costs incurred under the first three categories, but not the fourth.

However, some of the entries in AMerik's previous itemization of its fees and costs combined these categories. That is fine, so long as the fourth category is not involved, but to the extent that AMerik cannot separate the fees and costs incurred under the first three categories from those incurred under the fourth category, those amounts will not be included in the final judgment. In its next filing, AMerik shall include a tabulation of only those fees and costs that fall under the first three categories.

### 3. AMerik's Costs

Although AMerik is not entitled to recover the attorneys' fees it has incurred prosecuting its indemnity claims against Cosmic, as the prevailing party AMerik is entitled to recover the costs it has incurred

prosecuting those claims. FED.R.CIV.P. 54(d)(1).

## IV. Conclusion

Cosmic's motion for reconsideration [808] is DENIED. The Court will enter a judgment on Insituform's claims against Cosmic based on the $136 reasonable royalty calculated in its June 8, 2011 order.

Insituform's motion for an extension of time to submit its bill of costs and computation of interest [799] is GRANTED. Insituform is DIRECTED to submit an updated bill of costs and computation of interest by April 6, 2012. Cosmic will have until April 20, 2012 to object to Insituform's updated bill of costs and computation of interest. Insituform will then have until May 4, 2012 to reply to Cosmic's objections, if any.

As discussed in the Court's June 8, 2011 order, and as clarified herein, AMerik's renewed motion for entry of final judgment [709] is GRANTED IN PART and DENIED IN PART. Also, as discussed herein, AMerik's motion for partial reconsideration or clarification [805] is GRANTED IN PART and DENIED IN PART. AMerik is DIRECTED to submit the following by April 6, 2012: (1) a bill of costs relating solely to the prosecution of its indemnity claims against Cosmic, and (2) a computation of the costs and attorneys' fees to be awarded as consequential damages as described in section III.G.2 of this order. Cosmic will have until April 20, 2012 to object to AMerik's bill of costs and computation of consequential damages, and AMerik will have until May 4, 2012 to reply to Cosmic's objections, if any.